UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

MICHAEL KUTZBACK, individually on behalf
Of himself and other similiarly situated,

      Plaintiff,

                              CASE NO.:  2:13-cv-02767-JTF-cgc

v.

LMS INTELLIBOUND, LLC., a Foreign Limited
Liability Company, and CAPSTONE LOGISTICS,
LLC., a Domestic Limited Liability Company

      Defendants.

---

## PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION AND FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to the Federal and Local Rules of Civil Procedure and 29 U.S.C. § 216(b), Plaintiff, Michael Kutzback, on behalf of himself and others similarly situated, requests entry of an Order permitting, under court supervision, notice to all "Unloaders" (a/k/a "Lumpers") employed by Defendants, LMS Intellibound, LLC and Capstone Logistics, LLC (collectively "LMS" or "Defendants"), within the last three (3) years.

Plaintiff seeks to facilitate notice to the limited class of "Unloaders" who were/are compensated primarily on a production (piece-rate) basis, determined by the number and weight of the trucks unloaded, and who were/are not paid proper overtime compensation and/or minimum wages due to them, as required by the Fair Labor Standards Act ("FLSA"), for all hours worked. Such overtime wages and/or minimum wages were not paid because Defendants engaged in a nation-wide practice common to all locations and Unloaders whereby Defendants suffered/permitted their Unloaders to work off-the-clock hours, and failed to pay their Unloaders for same. Plaintiff's proposed Class Notice and Consent to Become an Opt-In Plaintiff are attached

hereto as **EXHIBITS A and B,** respectively.

**MEMORANDUM OF LAW**

I.   **THE FLSA AUTHORIZES COLLECTIVE ACTIONS**

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. *See* 29 U.S.C. § 216(b).  The FLSA provides, in part, that:

> An action to recover the liability [for unpaid overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of them self or themselves and other similarly situated. ***No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.***

*See id.* (emphasis added). As further set forth below, the initial step to this process is conditional certification and notice to potential class members upon the lenient standard of showing that the class members are similarly situated.  *See O'Brien v. Ed Donnelly Enters.,* 575 F.3d 567 (6th Cir. 2009); *see also Comer v. Wal-Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir. 2006).

A.   **Factual Background**

Defendants [1] provide third-party logistic services to companies in the warehouse, distribution, and manufacturing industries.  According to their website, Defendants operate in 240 locations and more than 40 states across the United States. *See* Excerpts from Defendants' website, attached as **Exhibit C** (http://www.capstonelogistics.com/about-us.aspx).

In order to provide their third-party logistics services, Defendants employ hundreds of Unloaders throughout the United States, at all of their clients' locations.  *See* Declaration of

---

[1] Defendants are a single employer/joint enterprise and jointly employed Plaintiff and other similarly situated Unloaders. Defendant, Capstone Logistics, LLC, is self-described as being a combination of Progressive Logistic Services and Defendant, LMS Intellibound, LLC. *See* **Exhibit C**. Defendants represent themselves as one entity and interchangeably use the company names Capstone Logistics and LMS Intellibound. *See* **Exhibit D.** Defendants also utilize one website (www.capstonelogistics.com), share common phone lines, and operate out of one central headquarter office, located at 6525 The Corners Pkwy, Suite 520, Peachtree Corners, Georgia 30092.

Michael Kutzback ("Kutzback Dec."), ¶ 5; Declaration of Andre Crutchfield ("Crutchfield Dec."), ¶ 5; Declaration of Seadrick Gantt ("Gantt Dec."), ¶ 5; Declaration of Fredrick Murray ("F.Murray Dec."), ¶ 5; Declaration of Jerry Murray ("J.Murray Dec."), ¶ 5; Declaration of Joel Palmer ("Palmer Dec."), ¶ 5; Declaration of Bobby Stevens ("Stevens Dec."), ¶ 5, collectively attached as **Composite Exhibit E.**[2]  The primary duty performed by all of Defendants' Unloaders' was/is to unload trucks and break down pallets received from companies Defendants service as third-party laborers.  *Id.* Defendants hire/recruit these Unloaders for all their locations nationwide via a centralized website, where they place job postings on their "career" page, located at http://www.capstonelogistics.com/careers.aspx. *See* **Exhibit F**.  As evidenced by these uniform job postings, Defendants employ Unloaders in locations throughout the United States, under an identical compensation structure and to perform very similar job duties. *See id.;*[3]  *see also* **Composite Exhibit D**, generally.  As these job postings show, all of Defendants' Unloaders were/are required to "perform pre-shift checks of equipment," unload merchandise, "break and restack product from pallets," and verify products received. Specifically, job postings from one ninety-two (92) of Defendant job sites across twenty-nine (29) states confirm that Defendants' Unloaders are paid on a Production basis. *See Id.*  Moreover, job postings from ninety-eight (98) of Defendants' job sites across thirty-two (32) states confirm that Defendants' Unloaders are required to perform pre-shift work. *See* **Composite Exhibit G.**  Similarly, job postings from sixty-nine (69) of Defendants' job sites across twenty-seven (27) states show Defendants' Unloaders are required to work until their work is complete, and not based on a set schedule. *See* **Composite Exhibit H**.

---

[2] For clarity, reference to declarations (after the declarant has been identified with their full name), will be made by reference to the declarant's last name and reference to the appropriate paragraph of the declaration.

[3] In fact, common spelling errors throughout these job postings suggest that a single person creates all job postings for Defendants' locations nationwide. *See* Composite **Exhibit I** (until spelled "till.")

As evidenced by the declarations of Plaintiff and the opt-in Plaintiffs, as well as Defendants'
own job descriptions for their Unloader position, Defendants compensate all of their Unloaders on
a production basis, determined by the number and weight of the trucks unloaded. *See* Kutzback
Dec. ¶ 6; Crutchfield Dec. ¶ 6; Gantt Dec. ¶ 6; F. Murray Dec. ¶ 6; J. Murray Dec. ¶ 6; Palmer Dec.
¶ 6; Stevens Dec. ¶ 6; *see also* **Composite Exhibit D**.

Defendants' Unloaders also were/are subjected to the same illegal pay practices at issue –
off-the-clock hours suffered/permitted to be worked, that resulted in sub-minimum wages and
unpaid overtime pay. *See* Kutzback Dec. ¶¶ 7-10, 17; Crutchfield Dec. ¶¶ 9-12, 16; Gantt Dec. ¶¶
9-12, 16; F. Murray Dec. ¶¶ 9-12, 16; J. Murray Dec. ¶¶ 9-12, 16; Palmer Dec. ¶¶ 9-12, 16; Stevens
Dec. ¶¶ 9-12, 16.

Simply put, Defendants failed to compensate their Unloader employees for all hours they
worked. As described further below, all of Defendants' Unloaders were subjected to Defendants'
common policies, whereby they required all Unloaders to work off the clock.  For example,
because Unloaders are compensated solely on a production basis, they are not compensated for
their time worked if and when trucks arrived late or failed to arrive at all. Kutzback Dec. ¶ 7. This
is true even though Unloaders were/are required to remain on duty at all times during their shifts.
*Id.*  Similarly, while all Unloaders were/are required to arrive early and work both before and after
their scheduled shifts until their work is finished for the day, they were not paid for all of this time.
Indeed, Defendants' own job descriptions for the Unloader position confirm that Unloaders'
"Daily Responsibilities" include "perform[ing] pre-shift" work and that Unloaders are required to
work "till finish[ed]." *See* **Exhibit G and H**; *see also* Kutzback Dec. ¶ 11. Moreover, as a matter
of course, Defendants' supervisors routinely clocked-out all Unloaders while the Unloaders

4

continued to work. *See* Crutchfield Dec. ¶ 8; Gantt Dec. ¶ 8; F. Murray Dec. ¶ 8; J. Murray Dec. ¶ 8; Palmer Dec. ¶ 8; Stevens Dec. ¶ 8; Kutzback Dec. ¶ 12.

The aforementioned illegal pay practices are company-wide practices, as evidenced by the declarations of Plaintiff and opt-in Plaintiffs, Unloaders employed at various locations throughout the United States. *See* **Composite Exhibit E**. Plaintiff and seven (7) of the opt-in plaintiffs — all of whom opted in prior to receiving court-approved notice — collectively worked in five (5) different warehouse locations, across four (4) different states.[4] Their declarations confirm that the same systematic off-the-clock violations exist regardless of the location in which an Unloader is employed. Further, Kutzback avers that he spoke with managers who worked at Defendants' facilities in Nashville, Tennessee and Goodletsville, Tennessee, who confirmed Defendants' off-the-clock pattern and practice in those locations as well. *See* Kutzback Dec. ¶¶ 23 – 25. Additionally, this is not the first lawsuit of its kind. Rather, at least two (2) other lawsuits have been filed against Defendants on behalf of Unloaders regarding similar off-the-clock allegations at Defendants' warehouses in Amarillo, Texas and Allentown, Pennsylvania. *See Cabrales v. LMS Intellibound, LLC and Capstone Logistics, LLC*, 2:13-cv-00161-j (N.D. Tex. August 28, 2013); *Simmons v. LMS Intellibound, Inc.*, 5:12-cv-03908-JKG (E.D. Penn. July 11, 2012). This is further evidence that conditional certification and court-approved notice is warranted. *See Reese v. Kimerbly Credit Counseling, Inc.*, 06-80505-CIV-PAINE/JOHNSON, DE 71 (S.D. Fla. Dec. 24, 2006)(finding affidavit of one named plaintiff and three opt-in plaintiffs, coupled with one prior lawsuit against the same Defendant for the same overtime violations to be sufficient for conditional certification of an FLSA collective action).

---

4 Plaintiff has presented evidence from Unloaders who worked in in Defendants' warehouses located at Memphis, Tennessee; South Haven, Mississippi; Miami, Florida; Jacksonville, Florida; and Aberdeen, Maryland. *See* Kutzback Dec. ¶ 23; Crutchfield Dec. ¶ 4; F. Murray Dec. ¶ 4; J. Murray Dec. ¶ 4; Gantt Dec. ¶ 4; Palmer Dec. ¶ 4.

This evidence, from nine (9) of Defendants' locations in six (6) different states across the country, as well as job postings from across the country, found at Defendants' single centralized website, confirms that Defendants' Unloaders are similarly situated and amply satisfies the lenient standard to proceed with nationwide conditional certification in this matter. This relief is consistent with precedent found in district Courts within the Sixth Circuit. *See Jackson v. Papa John's USA, Inc.,* 1:08-CV-2791, 2009 WL 385580 (N.D. Ohio Feb. 13, 2009) (nationwide class of assistant managers conditionally certified based on declarations by plaintiff and two opt-in plaintiffs from the same state and training manuals suggesting nationwide policies deeming plaintiffs similarly situated); *see also Heibel v. U.S. Bank Nat'l Assoc.*, 2012 WL 4463771 (S.D. Ohio Sept. 27, 2012) (nationwide class of mortgage loan officers conditionally certified based on declarations from named plaintiffs and opt-in plaintiffs, and similar job duties inferred by reclassification of entire class); *Monroe v. FTS USA, LLC*, 257 F.R.D. 634 (W.D. Tenn. 2009) (nationwide class of technicians conditionally certified based on declarations of three named plaintiffs, five opt-in plaintiffs, and evidence that technicians have similar job duties and similarly compensated on a piece-rate basis); *Knispel v. Chrysler Group, LLC*, 2012 WL 553722 (E.D. Mich. Feb. 21, 2012) (nationwide class of nonunion contract employees conditionally certified based on affidavits from two Plaintiffs and one opt-in plaintiff); *Burdine v. Covidine, Inc.*, 2011 WL 2976929 (E.D. Tenn. June 22, 2011) (nationwide class of pharmaceutical sales representatives conditionally certified based on affidavits from five plaintiffs and evidence that class had similar job descriptions and training programs).

Because Defendants' Unloaders all were/are compensated in the same manner and Defendants applied the same pay/record-keeping practices to all of them, they all suffered and continue to suffer from the same class-wide wage and hour violations alleged herein. *See*

Composite Exhibits D and E, generally. Plaintiff and opt-in Plaintiffs' claims are typical of the claims of other former and current Unloaders employed by Defendants, and typical of the claims of all members of the representative class identified. *See id.*

Defendants' unlawful compensation policies at issue here are applied to all members of the defined class of Unloaders, therefore warranting certification of a class consisting of all of Defendants' Unloaders. Based upon the record evidence presented to date, Plaintiffs have demonstrated that all of the Defendants' Unloaders are "similarly situated" because: (a) they all had the same title of "Unloader" or "Lumper"; (b) they were/are all paid on a production basis; (c) Defendants failed to compensate all Unloaders for all hours worked; (d) all Unloaders were suffered/permitted to work off-the-clock and were not paid for all hours worked; and (e) they performed nearly identical job duties on a day-to-day basis for Defendants. *See id.*

Simply put, all other Unloaders within the defined class are owed full and proper payment of their overtime wages and minimum wages and the right to participate in this litigation. It is undisputed that Defendants have acted, or refused to act, on grounds applicable to all Unloaders in the defined class, thereby making the identical relief appropriate with respect to the defined class as a whole. Moreover, the common questions of law and fact predominate over any questions affecting only Plaintiffs, and a collective action is superior to other available methods for the fair and equitable adjudication of the controversies between the representatives described above and the Defendants. And, although the defined class of current and former Unloaders is identified and certain, the individual members of the class cannot be completely identified and notified of their right to join this action absent access to Defendants' books and records regarding same.

Defendants' above compensation/record-keeping policies and practices are common to all Unloaders in the defined class who worked and/or continue to work for Defendants. Therefore,

Plaintiff seeks this Court's authorization to facilitate notice to each of Defendants' Unloaders in the defined class whom were/are subjected to the illegal pay practices described above at any time within the last three (3) years from the filing of this lawsuit. Plaintiff further request that he be permitted to give such notice as approved by this Court to all such class members of their rights to opt-in to this litigation by executing an appropriate consent as required by Section 216(b) of the FLSA. The declaration of the named Plaintiff, as well as the additional opt-in plaintiffs' declarations and exhibits attached to this Motion, clearly establish that Defendants' other Unloaders in the defined class had nearly identical duties, were paid in the same manner and were uniformly subjected to Defendants' illegal pay practices described above.   Thus, conditional certification and notice is appropriate.

## II.   <u>APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS</u>

FLSA collective actions operate differently than the typical class action suits under Rule 23 of the Federal Rules of Civil Procedure.  Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated class of plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case.  29 U.S.C. § 216(b); *see also Douglas v. GE Energy Reuter Stokes,* 2007 WL 1341779, at *2 (N.D. Ohio April 30, 2007). Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See id.* Conversely, in traditional class actions under Rule 23 of the Federal Rules of Civil Procedure, a plaintiff initiating a class action automatically represents every member of the class that has not expressly "opted-out." *See id.*

In *Hoffman- La Roche, Inc. v. Sperling,* 493 U.S. 165 (1989), the Supreme Court ruled that not only did trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, but that this authority also

included sending court-authorized consent forms to potential plaintiffs. *See id.* There, the Court addressed the issue of whether the district court may play any role on prescribing the terms and conditions of communication from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought. *See id.* The Court determined that district courts have discretion in appropriate cases to implement 29 U.S.C. §216(b) by facilitating notice to potential plaintiffs. *See id.* at 486. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *See id.*

Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute. Thus, it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time. *See id.* Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. *See id.* at 487. Additionally, the benefits of the collective action provisions of 29 U.S.C. §216(b) "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id.* at 486.

### A.   At this Stage, the Sixth Circuit Requires Only Minimal Evidence to Support Conditional Class Certification of a Class of Similarly Situated Workers.

The FLSA provides that a collective action "may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien*, 575 F.3d at 584. Once a collective action is certified, however, employees seeking to join the class must affirmatively opt into the litigation by filing a written consent with the court. 29

U.S.C. § 216(b).

The FLSA does not define the term "similarly situated." The Sixth Circuit has noted that courts have considered "the 'factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.' " *O'Brien,* 575 F.3d at 584 (quoting 7B Wright, Miller, & Kane, *Federal Practice and Procedure* § 1807 at 497 n. 65 (3d ed.2005)) (alterations in original). "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585. But employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." *Id.* at 584. In *O'Brien,* the Sixth Circuit stated that even a requirement that employees' "causes of action under the FLSA accrued at about the time and place in the approximate manner of the named plaintiff" would be "more demanding than what the [FLSA] requires." *Id.* at 585.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent.  *Comer,* 454 F.3d at 546; *O'Brien,* 575 F.3d at 583. "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer,* 454 F.3d at 546 (quotation marks omitted).

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. *Shabazz v. Asurion Ins. Serv.,* 2008 WL 1730318 (M.D. Tenn. April 10, 2008).

10

At that point, "'the certification is conditional and by no means final.' The plaintiff must show only that 'his position is similar, *not identical*, to the positions held by the putative class members.'" *Comer,* 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.,* 210 F.R.D. 591, 595 (S.D. Ohio 2002)(emphasis added). *See Thompson v. Bruister & Associates, Inc.,* 3:07-00412, 2013 WL 4507740 (M.D. Tenn. 2013)("Showing a 'unified' policy is not required, and, unlike Fed.R.Civ.P. 23(b), just because individualized issues may predominate, this does not necessarily mean that a collective action is inappropriate.") (Internal citations omitted).

In *Comer,* the Sixth Circuit approvingly quoted the lower court's decision, which stated that conditional certification "'need only be based on a modest factual showing,'" *id.* at 547 (quoting *Pritchard,* 210 F.R.D. at 596), and that the court should use "'a fairly lenient standard [that] typically results in ... certification,'" *Id.* (quoting *Morisky v. Public Serv. Elec. & Gas Co.,* 111 F.Supp.2d 493, 497 (D.N.J.2000)); *see also Shabazz,* 2008 WL 1730318, *3 (stating that plaintiffs "must simply submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]." (quotation marks omitted)). If the named plaintiff shows that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer,* 454 F.3d at 546.[5] "To require more at this stage of litigation would defeat the purpose of the two-stage analysis." *White v. MPW Indus. Servs., Inc.,* 236 F.R.D. 363, 368 (E.D. Tenn.2006).

After discovery, Defendants may move for decertification of the conditional class. *See O'Brien,* 575 F.3d at 583; *Shabazz,* 2008 WL 1730318, at *3 (citing *Anderson v. Cagle's, Inc.,* 488 F.3d 945, 952 (11th Cir.2007)). At this second stage, the court has access to more information and

---

[5] Also, any individual question regarding damages to class members is not sufficient to establish differences to defeat conditional certification. *Russell v. Life Win, Inc., et. al.,* Case No. 8:11-cv-2802-RAL-TBM, #25, Page 9 (M.D. Fla. April 23, 2012)("District courts have held that differences as to time actually worked, wages actually due, and hours involved are not significant to the conditional certification determination.")

employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547. *See Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012)("Plaintiffs generally must produce 'more than just allegations and affidavits' demonstrating similarity in order to achieve final certification.") This case is at Stage I, and as such, Plaintiffs have amply met their low burden.

**B.      Plaintiff Demonstrates a Reasonable Basis for Conditional Certification of a Collective Action.**

Here, there are questions of law or fact common to Defendants' other Unloaders and the claims of the Plaintiff.  Indeed, Plaintiff and opt-in Plaintiffs' claims are typical of the claims of the other individuals in their position that fall within the defined class.

As indicated above, based on the allegations in the Collective Action Complaint and the eight (8) attached declarations of Plaintiff and Opt-in Plaintiffs, Plaintiffs more than meet their burden to facilitate notice. Here, Defendants employ similarly situated Unloaders who were/are subjected to the same timekeeping and pay practices that were applicable to all Unloaders within the defined class.  To that end, Defendants employed, and continue to employ, Unloaders at 240 locations throughout the country who suffer under the same illegal pay practices.

Indeed, in the instant case, Plaintiff and opt-in Plaintiffs have presented evidence that meets or exceeds what courts in this district and throughout the country have deemed sufficient for conditional certification of an FLSA collective action. *See Sniffen v. Spectrum Indus. Servs.*, 2007 WL 1341772, at *2 (S.D. Ohio  Feb. 13, 2007)(even under the more restrictive standard of a "modest factual showing," the "affidavits of the two named plaintiffs [show] that potential class members are similarly situated"); *see also Parr v. Hico Concrete, Inc.*, 2011 WL 3293391 (M.D. Tenn. Aug. 1, 2011)(certifying collective action based on declarations from three class members); *Bernal v. Vankar Enterprises, Inc.*, 2008 WL 791963, at *3 (W.D. Tex. March 24, 2008)(class of

tipped bartenders conditionally certified based on plaintiff's complaint alleging an illegal tip pool and plaintiff's affidavit alone); and *Barreda v. Prospect Airport Services, Inc.*, 2008 WL 7431307 (N.D. Ill. 2008)(certifying **companywide** collective action based on affidavits from only **one** location).

In *Barreda*, the plaintiffs alleged company-wide violations and sought conditional certification based on affidavits from only one location. *See id.* at *1. The court in *Barreda* held that the plaintiffs had presented sufficient evidence of a policy that affected the entire putative class, and that the defendant even admitted the policy was the same nationwide. *See id.* at *2. The court, in granting conditional certification, stated that "[t]he fact that the only affidavits submitted in support of this finding come from O'Hare employees does not diminish the nationwide applicability of the offending policy." *Id.* at *2. Here, Unloaders who collectively worked at five different locations have come forward to join this lawsuit and provide declarations that the same pay policies were in effect company-wide. Moreover, evidence presented from nine of Defendants' locations in six different states across the nation also affirm Defendants' systematic company wide off-the-clock violations. This evidence alone is sufficient to show that a company-wide policy exists. Plaintiffs clearly satisfy the applicable burden of persuasion that a colorable basis exists for determining that other Unloaders similarly situated to Plaintiff exist, and conditional certification and notice to these individuals is warranted.

Furthermore, district courts have routinely conditionally certified collective actions based on off-the-clock work, just like here. *See Carden v. Scholastic Book Clubs, Inc.*, 2011 WL 2680769 (W.D. Mo. July 8, 2011)(granting FLSA conditional certification to class of customer service representatives for off-the-clock work performed); *Parr, supra* (granting FLSA conditional certification regarding off-the-clock claims); *Smith v. Family Video Movie Club, Inc.*, 2012 WL

580775 (N.D. Ill. Feb. 22, 2012)(granting FLSA conditional certification regarding off-the-clock claims and holding that a written policy against off-the-clock claims is not enough to defeat certification); *Titchenell v. Apria Healthcare, Inc.*, 2011 WL 5428559 (E.D. Pa. Nov. 8, 2011) (granting FLSA conditional certification regarding off-the-clock claims); *Green v. Drake Beam Morin, Inc.*, 2011 WL 6046940 (D. Colo. Dec. 6, 2011)(granting FLSA conditional certification regarding off-the-clock claims); *Mahmood v. Grantham University, Inc.*, 2011 WL 1899783 (W.D. Mo. May 19, 2011)(granting FLSA certification regarding off-the-clock claims).

Based on the allegations in the Collective Action Complaint and the eight (8) attached declarations of Plaintiff and Opt-in Plaintiffs, Plaintiff easily exceeds the applicable burden of persuasion that a colorable basis exists for determining that others similarly situated employees to Plaintiff exist, and conditional certification and notice are warranted.

## III.   FACTORS IRRELEVANT TO THE COURT'S CONSIDERATION

### A.   The "Merits" of Plaintiff's Claims Are Not Considered When Determining Whether to Grant Notice.

One of Defendants' efforts to defend against Plaintiff's claims will likely be based upon some contention that they properly paid their Unloaders, or that they did not commit the wage and hour violations alleged. However, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." *See Comer*, 454 F.3d at 548; *see also Kreher v. City of Atlanta, Georgia*, 2006 WL 739572, at *4 (N.D. Ga. March 20, 2006) (*citing Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)("The focus of [the conditional certification] inquiry is not whether there has been an actual violation of law, but rather on whether the proposed plaintiffs are "similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated); *Bernal v. Vankar Enterprises, Inc.*, 2008 WL 791963, at *3 (allegations that bartender tip pool was illegal sufficient for conditional

14

certification, notwithstanding employers contentions otherwise); *Shajan v. Baralo, Ltd.*, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) (At the conditional certification stage, "[w]eighing of the merits is absolutely inappropriate."); *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 91, 96 (S.D.N.Y. 2003)("Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff . . ..").

In *Kreher*, the court concluded that too high a burden would be placed on the plaintiffs at the preliminary notice stage if they were required to submit evidence of a highly particularized nature, as the defendant suggested. *See id.* at *4. As such, the *Kreher* court concluded that although the plaintiffs' affidavits lacked some details, they established the existence of other employees employed in similar positions and subject to similar policies, warranting the court's decision to grant the plaintiffs' motion under the "fairly lenient standard" applied for conditional certification. *Id.* at *4; *see also Leuthold,* 224 F.R.D. at 468 ("Defendants' arguments in their opposition brief focus on the more stringent, second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class."); *Goldman v. Radioshack Corp.*, 2003 WL 21250571, at *8 (E.D. Pa. Apr. 16, 2003)("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant."); *Felix De Asencio v. Tyson Foods, Inc.,*130 F. Supp. 2d 660, 663 (E.D. Pa. 2001)("While this information [submitted by Defendant] may play a more significant role after discovery and during an analysis of the second and final similarly situated tier, Plaintiffs have advanced sufficient evidence to meet their low burden at this first tier of the similarly situated question."). Thus, setting Defendants' anticipated factual/legal arguments aside for purposes of

Plaintiff's Stage I Motion, Plaintiff clearly has met his burden of proof on the "similarly situated" prong under *Comer.*

B.   **Courts Do Not Consider the Need for Discovery During Stage I.**

Courts have consistently recognized that discovery at the first notice stage is unnecessary for the similarly situated determination. *See Lloredo v. Radioshack Corp.,* 2005 WL 1156030, at *1 (S.D. Fla. May 12, 2005)(refusing to examine discovery in making its first stage similarly situated determination); *see also Harrison v. Enterprise Rent-A-Car Co.,* 1998 WL 422169, at *13 (M.D. Fla. July 1, 1998)(holding that the fact that subsequent discovery may prove the original plaintiffs and the opt-in plaintiffs are not after all "similarly situated" does not defeat conditional class certification); *Schwed v. Gen. Elec. Co.,* 159 F.R.D 373, 375 (N.D.N.Y. 1995) ("Even where later discovery proves the putative class members to be dissimilarly situated, notice . . . prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]").

An examination of discovery is not appropriate because, at this stage, the Court is not making a *factual determination* regarding whether the putative class members are "similarly situated." *See also Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D. Kan. 2004)("[T]he court will examine the individual plaintiffs' disparate factual and employment setting, as well as various defenses available to the defendant which appear to be individual to each plaintiff, during the 'second stage' analysis after the close of discovery."); *see also Goldman,* 2003 WL 21250571, at *8 ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant.").

Moreover, discovery is not necessary because courts at this stage do not resolve factual disputes or make credibility determinations. *See Rogers v. HCA Health Services of Tenn., Inc.,* 3:09-CV-1173, 2013 WL 3224026 (M.D. Tenn. 2013); *Brasfield v. Source Broadband Services,*

*LLC,* 257 F.R.D. 641, 642 (W.D.Tenn.2009); *Scott v. Heartland Home Finance,* 2006 WL 1209813, at *3 (N.D. Ga. May 3, 2006)(further citation omitted); *see also Camper v. Home Quality Mgmt., Inc.,* 200 F.R.D. 516, 520 (D. Md. 2000)("Factual disputes do not negate the appropriateness of court facilitated notice.") In *Scott,* the court held that it was not appropriate for the court to address the merits of plaintiffs' claims or weigh evidence and thus refused to consider the defendant's arguments regarding the variation in specific job duties, locations, working hours, or the availability of various exemptions. 2006 WL 1209813, at *3 (factual matters regarding the applicability of exemptions to employees not appropriate at notice stage); *see also Moss v. Crawford & Co.,* 201 F.R.D. 398, 410 (W.D. Pa. 2000) ("[V]ariations in the plaintiffs' duties, job locations and hourly billing rates do not differentiate the collective class to the extent that it defeats the primary objectives of a section 216(b) action.") Additionally, courts have held that any individualized defenses are **not** considered at the Stage I analysis, but are considered at the Stage II decertification stage. *Simpkins v. Pulte Home Corporation*, 2008 WL 3927275, *5 (M.D. Fla. Aug. 21, 2008)("[I]ndividual factual analysis is saved for the second stage of certification").

Through the allegations in the Complaint and the declarations attached to this Motion, as well as Defendants' own job descriptions, Plaintiff has provided sufficient evidence to warrant notice of this lawsuit be sent to all other Unloaders employed by Defendants. Because the "similarly situated" determination at the notice stage is preliminary, Defendants will not be prejudiced by the facilitation of notice because they can later argue that Plaintiff, opt-in Plaintiffs, and the putative class members are not in fact "similarly situated" enough to proceed collectively to trial once discovery is complete.

## IV.   PLAINTIFF'S NOTICE IS ACCURATE AND SHOULD BE E-MAILED AS WELL AS MAILED.

Plaintiff's proposed judicial notice is "timely, accurate, and informative." *See*

17

*Hoffmann-La Roche,* 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action, and should be adopted. To that end, Plaintiff requests he be permitted to email the Class Notice (Exhibit A) to all Unloaders within the defined class, in addition to mailing same via first-class mail. E-mail notice serves to further the broad remedial purpose of the FLSA and thus has widely been adopted by courts throughout the country recently. *See Lewis v. Huntington Nat. Bank*, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011)("The addresses on file for [former employees] may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package."); see also *Phelps v. MC Communications, Inc.*, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011)("The Court will permit Plaintiffs to email the notice to those employees for whom Defendants have email addresses, as well as send it by first class mail. Email is an efficient, reasonable, and low-cost supplemental form of notice, particularly where Defendants may lack current physical mailing address information for its former employees."). Many courts have previously authorized notice via email in FLSA cases, given the statute's remedial purpose and the goal of transmitting the notice to as many potential class members as possible. Moreover, as another court recently held, "[t]here is no sound reason not to do so here." *Butler v. DirectSAT USA, LLC*, 2012 WL 1203980, at *2 (D. Md. Apr. 10, 2012); *see also Denney v. Lester's, LLC*, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012)("[T]he Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail, and postings in Defendants' break rooms.")(citing *O'Donnell v. Sw. Bell Yellow Pages, Inc.,* 2012 WL 1802336, at *4 (E.D. Mo. May 17, 2012); *In re Deloitte & Touche, LLP Overtime Litig.,* 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)(noting that "communication through email is [now] the norm.").

### A.    A Reminder Notice Postcard is Appropriate.

Similar to the email transmission of the Notice, a reminder notice postcard is appropriate as well. Accordingly, Plaintiff requests that he be permitted to transmit a reminder notice postcard to the putative class at the half-way point in the Notice Period.  Indeed, courts have repeatedly permitted such a reminder notice, because it ensures that putative class members are aware of their rights and the time within which to exercise same. *See Hargrove v. Ryla Teleservices, Inc.,* 2012 WL 463442, at *1 (E.D. Va. Feb. 13, 2012) (authorizing plaintiffs' counsel to send a reminder letter to putative class members if responses were not received by plaintiffs within thirty days from the issuance of the original notice."); *Swarthout v. Ryla Teleservices, Inc.,* 2011 WL 6152347, at *5 (N.D. Ind. Dec. 12, 2011) (same); *Graham v. Overland Solutions, Inc.,* 2011 WL 1769737, at *4 (S.D. Cal. May 9, 2011) (approving reminder postcard to individuals who have not returned the opt-in forms); *Gee v. Suntrust Mortg., Inc.,* 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) ("Plaintiffs' counsel may mail a reminder notice forty-five days after issuance of the first notice."); *Harris v. Vector Marketing Corp.,* 716 F.Supp.2d 835, 847(N.D. Cal. 2010) ("Particularly since the FLSA requires an opt-in procedure, the sending of a [reminder] postcard is appropriate."); *Vasquez v. Coast Valley Roofing, Inc.,* 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (ordering third-party administrator to send reminder notice, because, "[t]hese procedures provide the best possible notice to the Class Members.")

In light of the FLSA's remedial purposes and the many cases explicitly approving a reminder notice, this Court should permit Plaintiff to send the putative class a reminder notice postcard to ensure they are aware of their rights and the applicable deadlines within which to exercise them.

### B.   A Ninety-Day Notice Period is Appropriate.

Notice periods may vary, but many courts around the country have authorized up to a one hundred twenty (120) day opt-in period for collective actions. Here, in line with many other courts Plaintiff respectfully request that the Court give putative class members ninety (90) days to return their consent to join forms and opt in to the case. Courts have routinely held that a ninety (90) day notice period is appropriate in FLSA cases. *See, e.g., Fiore v. Goodyear Tire & Rubber Co*., 2011 WL 867043, at *4 (M.D. Fla. March 10, 2011) (setting notice period at 90 days); *Gandhi v. Dell, Inc.*, 2009 WL 3427218, at *2 (W.D. Tex. Oct. 20, 2009) ("Ample authority suggests that 90 days is a reasonable amount of time to allow potential plaintiffs to opt in."); *Wass v. NPC Intern., Inc.*, 2011 WL 1118774, *5 (D. Kan. March 28, 2011) (denying the defendant's request to shorten the opt-in period to fewer than ninety days); *Calderon v. Geico Gen. Ins. Co.*, 2011 WL 98197, at *2, 8–9 (D. Md. Jan.12, 2011) (authorizing a ninety-day notice period); *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 68–69 (E.D. Pa. 2009) (finding a ninety-day opt-in period to be reasonable); *Shipes v. Amurcon Corp.*, 2012 WL 1720615, at *4 (E.D. Mich. May 16, 2012) (overruling defendant's objections to a 90 day opt-in period); *In re Wells Fargo Wage and Hour Employment Practices Litigation (No. III)*, 2012 WL 3308880, at *29 (S.D. Tex. Aug. 10, 2012) (approving 90 day opt-in period); *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868, at *1 (S.D. Ohio June 16, 2008)(same); *Hernandez v. Two Bros. Farm, LLC*, 2008 WL 4613069, at *2 (S.D. Fla. Oct. 15, 2008)(same); *Ballew v. Lennar Corp.*, 2008 WL 4218137, at *1 (M.D. Fla. Sept. 11, 2008) ("The Court further finds the 90 day period to be reasonable…").

In line with the above authority, Plaintiff respectfully request that the Court set the notice period at 90 days in this case.

V.     **NOTICE SHOULD BE GIVEN WITHIN A THREE-YEAR STATUTE OF LIMITATIONS PERIOD.**

Notice within a three-year statute of limitations period is appropriate in this case. The FLSA allows Plaintiff to collect damages within a three-year statute of limitations if they can show that Defendants' violation of the FLSA was "willful" – meaning the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Whether Defendants' violations of the FLSA were willful is an issue going to the merits of the case and not whether notice should be issued to potential claimants. *See Villatoro v. Kim Son Restaurant, L.P.*, 286 F.Supp.2d 807, 811 (S.D.Tex.2003). The facts concerning willfulness must be elicited during discovery, and Defendants may challenge the three-year statute of limitations again at an appropriate time.  Thus, notice should go to all individuals who were employed by Defendants during the three-year period preceding the Court's ruling on the instant Motion.  *See Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937 (W.D. Ark. 2007).

VI.    **LIMITED DISCOVERY OF NAMES AND CONTACT INFORMATION OF THE PUTATIVE CLASS IS NECESSARY TO CARRY OUT NOTICE**

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. *Morden v. T-Mobile USA, Inc.*, 2006 WL 1727987, at *3 (W.D.Wash. June 22, 2006)(compelling the defendant to produce the names and addresses of potentially similarly situated employees despite the fact that no conditional class certification motion was pending before the court). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt in to the action." *Id.* As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to

facilitate notice. *See, e.g., Hoffmann-La Roche,* 493 U.S. at 165; *see also Anglada v. Linens 'N Things, Inc.,* 2007 WL 1552511, at *7 (S.D.N.Y. May 29, 2007); *Henry v. Quicken Loans, Inc.,* 2006 WL 2811291, at *7 (E.D. Mich. Sept. 28, 2006); *Gieseke v. First Horizon Home Loan Corp.,* 408 F. Supp. 2d 1164, 1169 (D. Kan. Jan. 10, 2006); *Dietrich v. Liberty Square,* 230 F.R.D. 574, 581 (N.D. Iowa 2005).[6] Thus, if this Court grants Plaintiff's Motion, the Court should likewise order Defendants to provide Plaintifs with a list of all putative class members' names, addresses, phone numbers, social security numbers,[7] and e-mail addresses to carry out notice.

## CONCLUSION

Given the broad remedial provisions of the FLSA, coupled with the incredibly lenient standard for conditional certification, Plaintiff's allegations and declarations, along with all of the additional declarations and exhibits attached to this Motion, are more than sufficient to satisfy Plaintiff's relatively light burden of showing this Court that "there are [similarly situated] persons … who have suffered wage and hour violations who would join this suit if they had notice of the suit." *See Barron, supra.*

WHEREFORE, Plaintiff, MICHAEL KUTZBACK, on behalf of himself and similarly situated individuals, respectfully request this Court issue an Order:

(i)       conditionally certifying a class of current and former Unloaders or Lumpers who worked for Defendants from three years prior to the Order granting this Motion to the present;

---

6 The names, phone numbers, emails, and addresses of potential class members are discoverable during the regular course of discovery even absent judicial notice because current and former Unloaders are critical fact witnesses to this lawsuit. *Hoffmann-La Roche* acknowledged the existence of "alternative bases for the discovery, for instance that the employees might have knowledge of other discoverable matter." 493 U.S. at 160; *see also Franco v. Bank of America Corp.,* 691 F.Supp.2d 1324 (M.D. Fla. 2010) (granting plaintiff's motion to compel discovery of names of potential similarly situated employees); *Disimone v. Atlas Service, Inc.,* 2009 WL 5166262 (S.D. Fla. 2009) (ordering defendant to produce a list of plaintiffs' co-workers prior to conditional certification).

7 Social Security numbers are necessary to effectuate notice so that class members' names can be processed through the national change of address database to ensure the most up to date physical addresses.

(ii)      directing Defendants to produce to undersigned counsel within fourteen (14) days of the Order granting this Motion a list containing the names, the last known addresses, phone numbers, social security numbers, and e-mail addresses of putative class members who worked for Defendants from three years prior to the Order granting this Motion to the present;

(iii)      authorizing undersigned counsel to send notice, in the form attached hereto as Exhibit A, to all individuals whose names appear on the list produced by Defendants' counsel by first-class mail and e-mail;

(iv)      providing all individuals whose names appear on the list produced by Defendants' counsel with ninety (90) days from the date the notices are initially mailed to file a Consent to Become Opt-In Plaintiff, in the form attached hereto as Exhibit B; and

(v)      any other relief that is just and appropriate.

## CERTIFICATE OF GOOD FAITH CONFERRAL

Plaintiff's counsel conferred with Defendants' counsel in a good faith effort to resolve this Motion prior to its filing, but Defendants advised that they opposed the relief sought in this Motion.

Respectfully submitted this 18th day of February, 2014.


**/s/  MICHAEL HANNA**
MICHAEL HANNA, Esquire
Florida Bar No.: 85035
ANDREW FRISCH, Esquire
Florida Bar No.: 27777
Morgan & Morgan, P.A.
600 N. Pine Island Rd., Suite 400
Plantation, FL 33324
Telephone: (954) 318-0268
Facsimile:  (954) 333-3515
Email: MHanna@forthepeople.com
E-mail: AFrisch@forthepeople.com

*Trial Counsel for Plaintiff*