UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

MICHAEL KUTZBACK, individually on behalf
of himself and other similarly situated,

    Plaintiff,

    vs.

CASE NO.: 2:13-cv-02767-JTF-cgc

LMS INTELLIBOUND, LLC., a Foreign Limited
Liability Company, and CAPSTONE
LOGISTICS, LLC., a Domestic Limited Liability
Company

    Defendants.

**MOTION FOR CORRECTIVE NOTICE AND SANCTIONS AND
INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Michael Kutzback, by and through his undersigned counsel, files this Motion for Corrective Notice and Sanctions and Incorporated Memorandum of Law.

**BACKGROUND**

On October 2, 2013, Michael Kutzback, on behalf of himself and all other similarly-situated Unloaders who worked for LMS Intellibound, LLC. ("LMS") and Capstone Logistics LLC. ("Capstone") filed the present Fair Labor Standards Act ("FLSA") collective action against Defendants, and alleged systematic off-the-clock violations that resulted in minimum wage and unpaid overtime violations. *See* D.E. 1 and Amended Complaint at D.E. 32. On February 18, 2014, Plaintiff filed his motion to conditionally certify the FLSA nationwide collective action. *See* D.E. 43. On December 12, 2014, Magistrate Claxton issued a report and recommendation certifying the collective action. *See* D.E. 68. Defendants objected to Magistrate Claxton's Report, but the Western District of Tennessee Adopted the Magistrate Judge's Report and Recommendation and conditionally certified the collective action on March 25, 2015. *See* D.E.

78 (hereinafter the "Kutzback Nationwide Collective Action.")

The Opt-in period for this collective action was from May 8, 2015 to July 7, 2015 (hereinafter the "Opt-in Period.")  Approximately 3,400 Opt-in Plaintiffs filed their consent to join form in this matter.  However, over 24,000 putative class members elected not to file their consent to join this collective action.  Since that time, and most recently on October 27, 2016, Plaintiffs' counsel became aware of at least two systematic occurrences where Defendants interfered with the putative class members from opting-in to the Kutzback Nationwide Collective Action, usurped this Court's role in managing the notice to the putative opt-in plaintiffs, and intentionally confused putative opt-in plaintiffs in an effort to reduce participation in the case.

    **1. Defendants threatened their Unloaders who were currently employed by Defendants during the Opt-in period in order to discourage such current employees from opting in to this collective action.**

On October 27, 2016, Defendants deposed Michael Kindsvatter.  Mr. Kindsvatter is a former Unloader, Team Lead, Supervisor, and Site Manager for Defendants.  *See* Kindsvatter Declaration ("Dec."), attached as **Exhibit 1** ¶¶ 4, 5.  Mr. Kindsvatter worked for Defendants from 2010 to 2015.  *See* Kindsvatter Deposition ("Dep.") attached as **Exhibit 2** 13:18-24.  Mr. Kindsvatter worked at five of Defendants' facilities located in Maryland and Virginia.  Kindsvatter Dep. pp. 19 – 23.  Significantly, during the Opt-in period, Mr. Kindsvatter worked for Defendants as a Site Manager.  *See* Kindsvatter Dep. 17:9-13.

Capstone managers throughout the country, including Kindsvatter, took/take part in weekly management conference calls with Capstone directors and corporate managers, including the weekly Operational Excellence ("OpEx") conference calls.  *See* Kindsvatter Dep. pp. 32-33.  As a Site Manager, Mr. Kindsvatter took part in the weekly Capstone management calls with Capstone Corporate Directors, including the OpEx conference calls with his Capstone Director

2

David Finken.  Kindsvatter Dec. at ¶ 49.  During the OpEx calls at the time of the Opt-in period for the Kutzback Nationwide Collective Action, Mr. Kindsvatter testified:

> When word about this lawsuit began to get around to Capstone corporate management, David Finken advised me on a conference call with all of his Site Managers that **"we better not be a part of this,"** because we were former **Unloaders, and to make sure to warn the Unloaders that if they get involved in the case, they are "out the door."  As a result, I advised my good employees not to join the lawsuit so that I, and they, would not be terminated.**

*Id.* (emphasis added); *See also* Kindsvatter Dep. at pp. 15 – 16 (Capstone Corporate Director "said that if I haven't heard already, this was—we were on like a conference with his direct sites.  Usually the directors have about eight to ten sites that they're on, so we do conference calls.  And let us know that there was a lawsuit pending, let my associates know if they don't know, and that he didn't want us to be part of it."); *Id.* at 34:18-23 (**Q**: "Okay. And what did he say specifically that you referred to as a reference to it?" **A**: "He *wanted us to make sure that nobody signed the paper*.  There was a paper that they emailed[1] us to send out.  And that, again, it wouldn't look good if they did it and *wanted everyone to keep their job*.") (emphasis added).

Capstone's threat to terminate employees that opted-in to this collective action was made by Capstone's Corporate Director presiding over ten other facilities' site managers in the aforementioned Capstone OpEx Conference Calls, where Mr. Finken instructed these managers to disseminate this threat to putative class members they supervised.  *See* Kindsvatter Dep. p. 32.  All of Capstone's managers at facilities across the nation are required to partake in similar weekly OpEx conference calls with their respective Capstone Director.  Aside from the ten facility managers on the OpEx conference call with Mr. Kindsvatter, upon information and belief, similar OpEx calls took place during the Opt-in period of the Kutzback Nationwide Collective Action

---

[1] The "paper that was emailed" clearly refers to the electronic consent to join for that was sent via mail and e-mail to all putative collective action members during the opt-in period.

throughout the country, where Capstone Directors unequivocally instructed the Capstone mangers to threaten the unloaders that they supervised and deter them from joining this collective action.

As a result of the conference call with his superior, Mr. Kindsvatter admitted that he personally informed the approximately 30 to 35 Unloaders that he managed about Mr. Finken's threat, and that they should be "fearful of losing their job if they joined the litigation," pursuant to Capstone's Corporate Director's express instructions to him.  *See* Kindsvatter Dep. pp. 33 – 35. Mr. Kindsvatter also elected not join this collective action, even though he worked for Capstone as an Unloader prior to being promoted to various managerial positions.  *See* Kindsvatter Dep. 12:19-21.[2]  At least in part as a result of these threats, only approximately 3,400 putative class members opted-in to this lawsuit of the approximately 28,000 putative class members that received the class notice.

**2. Defendants also sent a notice of settlement to all California Unloaders during the Opt-in Period that advised them that they had released their FLSA claims which confused and discouraged participation in this collective action.**

In addition to the above, Defendants also intentionally caused an improper and confusing notice to issue to all California unloaders simultaneous with the issuance of the notice approved by this Court.  Defendant, Capstone and one of its predecessor companies Progressive Logistics Service, LLC[3] was involved in a single-Plaintiff lawsuit brought exclusively under California state law claims before the Superior Court of California, in a matter entitled *Anaya v. Progressive Logistics Service, LLC*, Case No.: Ric 1308270.  Notably, the *Anaya* Amended Complaint alleges solely California State Law causes of action and **does not include any causes of action for FLSA violations**.  Seyfarth Shaw, Defendants' counsel in this case, also represented Defendants

---

[2] Mr. Kindsvatter also admitted that he implemented and enforced Capstone's off-the-clock policies pursuant to his supervisors' instructions, and systematically clocked the Unloaders out and forced them to work off-the-clock.  *See* Kindsvatter Dec. ¶¶ 11 – 48.

[3] Progressive Logistics Services, LLC and LMS Intellibound, LLC merged to form Capstone Logistics, LLC.

in the *Anaya* matter.

Two months after this Court granted nationwide conditional certification in this collective action, on May 15, 2015 the Superior Court of California conducted a hearing for preliminary approval of a class-wide settlement in the *Anaya* matter that included, *inter alia* all California Unloaders. During that hearing, Defendants obtained preliminary approval of the *Anaya* class-wide settlement by intentionally failing to advise the Superior Court of California of the then recently-certified Kutzback nationwide collective action.[4]

As a result of Defendants' intentional omission to the Superior Court of California, notice of Class Action Settlement for the *Anaya* class-wide settlement was sent out to, *inter alia*, all of Defendants' Unloaders that worked in California. *See* Anaya Class Action Settlement Notice, attached as **Exhibit 3**. The *Anaya* Notice of Settlement was sent **during the Opt-in period** for this collective action, and required the members of that class action—which included all California-based Unloaders—to affirmatively opt-out of that class action by August 10, 2015.

The *Anaya* Notice sent during the Opt-in period for this collective action impermissibly sought to release all class action members of their FLSA claims, which would include their

---

[4] In contrast to the contentious litigation that ensued in this collective action—which currently includes 216 filings in the federal docket—the *Anaya* lawsuit complaint was filed, the case management conference hearing took place on March 20, 2014, and the parties immediately came to terms to settle that **single-plaintiff lawsuit** on a class-wide basis on April 4, 2014. The *Anaya* matter settled on a class-wide basis for approximately **one million dollars without conducting any formal discovery**, a figure that **grossly undervalues** the liability alleged by the members of the Kutzback Nationwide Collective Action. The *Anaya* settlement received final approved on November 18, 2015, or **six months** after Defendants became aware of the conflict between the Kutzback Nationwide Collective Action and the *Anaya* class-wide settlement. However, Defendants fraudulently concealed this conflict from the Superior Court of California, the Western District of Tennessee, and undersigned counsel. The *Anaya* class-wide settlement appears to have been motivated largely if not entirely by Defendants' desire to rid themselves of liability for all California-based workers from this current collective action. While this desire is not illegal or improper, Defendants accomplished this desire through improper means because they fraudulently concealed material conflicts to this Court and to the California Superior Court in the settlement hearing, failed to uphold their ethical obligations regarding their duty of candor to this Court by virtue of their failure to disclose binding authority adverse to their requested relief, improperly engaged in *ex parte* communications with Plaintiff Class Members they knew to be represented by counsel (with respect to their FLSA claims) by directly sending them settlement communications to persuade them to settle this matter, and failed to advise the Western District of Tennessee, the Superior Court of the State of California and undersigned counsel of the conflict that exists for 199 members of the Kutzback Nationwide Collective Action who are detrimentally impacted by the *Anaya* class-wide settlement.

participation in this collective action.  See **Ex. 3** p. 3.  The *Anaya* Class Action Settlement notice also did not include any provisions advising the "class members" to contact their attorneys, or seek their advice regarding that settlement notice.  Ultimately, 199 California-based Unloaders joined the Kutzback Nationwide Collective Action.  However, the majority of California-based Unloaders were misled to believe that they may only join the *Anaya* Class Action or the Kutzback Nationwide Collective Action due to the impermissible and fraudulently-approved *Anaya* notice, and impermissible release of FLSA claims in the Anaya Class Action Settlement Notice.

The *Anaya* Class Action fraudulently obtained approval on November 18, 2015.  Thirty days later and on December 18, 2015[5], Defendants' counsel advised the undersigned counsel for the first time of the *Anaya* lawsuit and class-wide settlement, and request to Opt-out the 183 California workers who affirmatively opted-in to the Kutzback Nationwide Collective Action, and argued that these individuals have been barred by the doctrines of *res judicata* or collateral estoppel.  Defendants' reasoning for seeking this outrageous relief in light of their misconduct is because:

> The *Kutzback* Opt-ins who worked in California have already litigated their wage and hour claims against Capstone.  Unless they excluded themselves from the *Anaya* Plaintiff Class, their claims have been adjudicated on the merits through settlement. They have been paid for their disputed claims[6] of off-the-clock work and cannot take a second bite at the apple through this case.

---

[5] Indeed, Defendants waited to advise the undersigned counsel of this conflict until December 18, 2015, or **exactly thirty days after** the November 18, 2015.  Of course, the *Anaya* class settlement indicates that "the settlement administrator shall distribute the Net Settlement Payment within 30 calendar days after the Effective Date, or as otherwise directed by the Court."  *See* Order approving the *Anaya* class settlement, attached as **Exhibit 8**.

[6] The *Anaya* class Settlement grossly undercompensates Defendants' Unloaders, and does not comport with the facts and damages alleged by the Kutzback Nationwide Collective Action members.  Specifically, the *Anaya* class action's "formula for calculating each class member's payment" indicates that "for every week worked, each individual class member will receive $7.35."  Moreover, the settlement agreement indicates that 25% of that amount compensated Plaintiff for wages.  Accordingly, under the *Anaya* settlement, each Unloader is to receive $1.83 for unpaid wages for each qualified workweek.   However, the *Kutzback* Nationwide Collective action members have alleged that they were, on average, not compensated for over ten hours of overtime work each workweek, and are also entitled to liquidated damages under the FLSA. *See* **Exhibit 5**.

6

**Exhibit 4** p. 3.

In light of Defendants' fraudulent concealment and a host of other reasons, on December 31, 2015, the undersigned counsel filed a Motion to Set Aside, Vacate, or Amend Order Granting Final Approval of Settlement in the *Anaya* litigation on behalf of the 199 California Members of the Kutzback Nationwide Collective Action. *See* **Exhibit 6**. There, the Kutzback Plaintiffs sought to Set Aside, Vacate, or Amend the Order granting Final Approval of Settlement for the following reasons:

> (1) Defendants' intentional concealment of these proceedings, including the settlement and the approval proceedings from the undersigned counsel for the 183 Plaintiffs they knew to be represented by counsel with respect to their FLSA claims; (2) Incorrect or erroneous legal basis for the decision. Specifically, despite a federal statute (the FLSA) and case law construing same that the settlement of FLSA claims cannot be binding on any employee/class member absent the affirmative exercise of his or her rights to "opt-in" to an FLSA case, the Court approved the settlement which provides for the release of such FLSA rights of any employee who failed to exclude themselves from the opt-out class action. (3) Defendants' intentional concealment of authority directly contrary to the relief the parties sought when they sought approval of their impermissible settlement agreement, which included an improper release of FLSA claims. (4) Defendants' intentional concealment from the Court of the Kutzback Nationwide Collective Action and the 183 Plaintiff Class Members whose rights were affected by the parties' settlement agreement here, despite the lack of notice to their counsel and the inadequate notice regarding their FLSA claims in the notice of settlement. (5) In the interest of justice, where Defendants failed to advise undersigned counsel of these legal proceedings—or anything related to a class-wide settlement releasing FLSA claims in this single-plaintiff lawsuit alleging California wage and hour violations—until December 18, 2015, where Defendants now demand the 183 California members of the Kutzback Nationwide Collective action withdraw their consent to join forms, which were filed 3 – 6 months prior to the approval of this class-wide settlement in the Western District of Tennessee. Even to date, Defendants have failed to serve undersigned counsel with the required notice under CCP 657 – 663, *et. seq.* because they have only emailed us a copy of the Order approving final settlement on December 18, 2015.

*See Id.* Undersigned counsel also sought sanctions for Defendants' intentional misconduct. *Id.*

On June 8, 2016, the parties resolved the aforementioned issue on behalf of the 199 California-based Opt-in Plaintiffs who affirmatively Opted-in to the Kutzback Nationwide

Collective Action, and entered into an Amended Joint Stipulation to Resolve the Motion to Set Aside, Vacate or Amend Order Granting Final Approval of Settlement. *See* **Exhibit 7**. There, Defendants stipulated, *inter alia*, to entering an Amended Order Granting Final Approval of Class Action Settlement that would specific that there is no release of any FLSA claims as part of the class action settlement in the *Anaya* Action. In the Amended Joint Stipulation, Defendants also agreed to compensate the undersigned counsel his fees and costs in the amount of $21,500 for his work related to and in preparation of Plaintiff's Motion to Set Aside, Vacate, or Amend Order Granting Final Approval of Settlement in the *Anaya* litigation on behalf of the 199 California Members of the Kutzback Nationwide Collective Action. *See Id.*

Defendants' stipulation to the fact that there is no release of any FLSA claims in the *Anaya* class action settlement cures the defect of this intentional misrepresentation for the 199 California-based Opt-in Plaintiffs who affirmatively opted-in to the Kutzback Nationwide Collective Action. However, this class-wide stipulation was entered into on June 13, 2016, or approximately eleven months after the Opt-in period in the Kutzback Nationwide Collective Action. Accordingly, while the California-based Unloaders who did not Opt-in to the Kutzback Nationwide Collective Action received notice of the fact that they did not release their FLSA claims through participation in the *Anaya* class action in June 2016, the corrective notice issued one year after the close of the Opt-in period for this nationwide collective action in the *Anaya* case, provided no avenue by which California based putative opt-in plaintiffs could elect to opt in to this collective action by virtue of the fact that the Opt-in period expired one year prior.

To fully cure the aforementioned defects—consisting of the systematic threats made to prospective class members during the Opt-in Period by Capstone's managers and directors, and the impermissible notice of FLSA waiver sent out during the Opt-in Period where FLSA claims

8

were not actually waived—Plaintiff respectfully requests the Court permit the Plaintiff issue corrective notice to all prospective class members who did not Opt-in to this collective action company wide, advising them of the FLSA's anti-retaliation provision and the fact that FLSA claims were not previously waived, and to toll their statute of limitations from the beginning of the initial Opt-in period from May 8, 2015.  Alternatively, Plaintiff respectfully requests the Court permit the Plaintiff issue corrective notice to all California-based Unloaders and to all Unloaders who worked for facilities that were under Capstone Director David Finken's supervision, and to toll their statute of limitations from the beginning of the initial Opt-in period from May 8, 2015.

## MEMORANDUM OF LAW

**1. Corrective notice is necessary to Cure Defendants' impermissible communications.**

Under Rule 23(c) of the Federal Rules of Civil Procedures, the district court bears responsibility to direct the "best notice practicable" to class members and to safeguard those members from unauthorized, misleading communications. *See Erhardt v. Prudential Group, Inc.,* 629 F.2d 843, 846 (2d Cir. 1980).  The Supreme Court of the United States held that the same policy applies to collective actions brought under § 16(b) of the FLSA, 29 U.S.C. § 216(b), and placed the responsibility on the district courts to facilitate notice to potential class members. *See Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165 (1989).[7]

The Supreme Court further recognized that judicial oversight of the contents of the notice helps protect against misleading communications to potential class members because the court

---

[7] *See Id.* at 170 – 171. ("Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. It follows that, once an [FLSA] action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.")

9

resolves any disputes about the contents of the notice prior to its distribution. *See Sperling*, 493 U.S. at 171. "Because class actions present special opportunities for abuse, courts have broad authority to govern the conduct of both counsel and parties in FLSA collective actions." *Pacheco v. Aldeeb*, 127 F. Supp. 3d 694, 697 (W.D. Tex. 2015). Due to this potential for abuse in collective actions, such as unapproved, misleading communications made to absent class members, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100 (1981).

The Courts "have found a need to limit communications with absent class members where the communications were misleading, coercive, or an improper attempt to ... encourag[e] class members not to join the suit." *Pacheco v. Aldeeb*, 127 F. Supp. 3d 694, 698 (W.D. Tex. 2015); *See also Kleiner v. First Nat. Bank of At.,* 751 F.2d 1193, 1206 (11th Cir.1985); *Erhardt,* 629 F.2d at 845 (enjoining defendants from further communications with class members; ordering defendants to provide new class notice advising class members that previous decisions to opt-out were voidable; and imposing monetary sanctions); *Impervious Paint Industries, Inc. v. Ashland Oil,* 508 F. Supp. 720,723-4 (W.D. Ky. 198l) (imposing injunction upon defendant's attorneys prohibiting contact with class members and restoring class members that opted out to the class); *Haffer v. Temple Univ. of the Commonwealth Sys. of Higher Educ.,* 115 F.R.D. 506, 512 (E.D.Pa.1987) (holding that courts routinely issue restraining orders after parties initiate improper communications with class members); *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 667 (E.D.Tex.2003) (recognizing the potential for "abuses in collective actions, such as unapproved, misleading communications to absent class members."). Such "[u]nsupervised unilateral communications with the plaintiff class sabotage the goal of informed consent . . . . The damage

from these statements could well be irreparable." *Kleiner,* 751 F.2d at 1203.

As such, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate [protective] orders governing the conduct of counsel and parties." *Belt,* 299 F.Supp.2d at 667 *(citing Gulf Oil v. Bernard,* 452 U.S. 90, 100 (1981)). *See also Keystone Tobacco Co., Inc v. U.S. Tobacco Co.,* 238 F.Supp.2d 151, 154 (D.D.C. 2002) ("[T]he Court rejects defendants' position that it has no authority to limit communications between litigants and putative class members prior to class certification."); *Haffer v. Temple Univ. of the Commonwealth Sys. of Higher Educ.,* 115 F.R.D. 506, 512 (E.D.Pa.1987) (discussing a court's curative powers after "parties initiate improper communications with class members"). "Although the Court has broad authority to manage the collective action, the First Amendment requires the Court to tailor any restrictions on a party's ability to speak with absent class members." *Belt,* 299 F.Supp.2d at 667.  Nonetheless, such First Amendment concerns fall by the wayside when speech to be protected is coercive and prejudicial, as is the case with Defendants' actions in the present case. *See Kleiner,* 751 F.2d at 1193 (finding that a district court had the power to void "opt-outs" by class members that stemmed from defendants' improper communications with putative class members).  In addition, courts routinely limit communications with absent class members "where the communications were misleading, coercive, or an improper attempt to undermine Rule 23 [or an FLSA collective action] by encouraging class members not to join the suit." *Belt,* 299 F.Supp.2d at 667 (citing *Kleiner,* 751 F.2d at 1206; *Burrell v. Crown Central Petroleum,* 176 F.R.D. 239, 244-45 (E.D.Tex.1997); *Hampton Hardware, Inc. v. Cotter & Co., Inc.,* 156 F.R.D. 630, 632-33 (N.D.Tex.1994)).

Here, there is ample evidence that Defendants improperly and coercively discouraged their employees from joining this suit, and have further attempted to use their influence as

employers to force putative class members from joining this lawsuit during the opt-in period. Defendants' corporate directors disseminated a class-wide threat discouraging potential class members from joining the litigation through Defendants' weekly OpEx calls, and instructed Defendants' managers to warn the Unloaders they supervise to also not join the litigation because Capstone wanted everyone to "*keep their job*," and that signing the consent to join would mean they would be "*out the door*," or terminated from employment. These threats were admittedly made by Capstone's corporate manager pursuant to his directors' initiatives. Without question, Defendants' communication to Michael Kindsvatter, and Kindsvatter's subsequent communication to putative class members was coercive in that it unreasonably convinced the Unloaders, including Michael Kindsvatter himself, to not join the case based on Capstone's threats. These threats were disseminated to all ten Capstone Site Managers supervised by Capstone Director David Finken in above-referenced OpEx conference call. Upon information and belief, similar threats were made on all OpEx conference calls during the Opt-in period. Capstone's communications here rise to the level of coerciveness given the relationship between Defendants and the putative class members, who all were affiliated with Defendants and related entities at the time of the Opt-in period.

      Indeed, the Supreme Court has noted that there is a heightened potential for abuse in the employer-employee context. In so doing, the Supreme Court cautioned that any evaluation of communications in the employer-employee context "must take into account the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear." *NLRB v. Gissel Packing Co.,* 23 L.Ed.2d 547, 617-18 (1969). *See Belt,* 299 F.Supp.2d at 668 (Communications from an employer to an

employee "have heightened potential for coercion because where the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive.") The employer-employee relationship is different from that involving an independent voter who "may be freer to listen more objectively. *Id.* Thus, such communications must be monitored due to the potential for coercion. *Id.*; *see also Abdallah v. Coca-Cola Co.,* 186 F.R.D. 672 (N.D. Ga. 1999) ("Coca-Cola has not given the Court any reason to suspect that it will attempt to mislead its employees and coerce them into non-participation in this case. But simple reality suggests the danger of coercion is real and justifies the imposition of limitations on Coca-Cola's communications with potential class members.")

Defendants also intentionally concealed from this court, the California Superior Court, and undersigned counsel the conflict that exists from sending a class action settlement notice with an FLSA waiver to putative class members *during the* Opt-in period of a nationwide FLSA collective action. The *Anaya* notice of settlement that was simultaneously disseminated to all California based-unloaders attempted to impermissibly release all California Unloaders who did not opt-out of the *Anaya* Rule 23 class action of their FLSA claims, and impermissibly advised all California Unloaders of same; all while intentionally concealing this conflict from the Superior Court of California, the Western District of Tennessee, and undersigned counsel.

The conflicting notices no doubt confused and impermissibly advised the California-based Unloaders of a conflict amongst the two lawsuits due to a release of FLSA claims that was impermissibly obtained in the *Anaya* Court through Defendants' fraudulent concealment of the then-certified FLSA collective action. "Unapproved notice to class members which are factually or legally incomplete lack objectivity and neutrality... [and] will surely result in confusion and adversely affect the administration of justice." *Erhardt,* 629 F.2d at 846.

While the *Anaya* Defendants have since stipulated to the fact that the *Anaya* settlement does not release the California-based Unloaders from their FLSA claims, this stipulation was entered into eleven months after the close of the opt-in period in this nationwide collective action. This stipulation does not cure the prospective California based Unloaders who impermissibly lost their ability to opt-in to this collective action based on Defendants' coercive and impermissible communications.

Defendants' conduct should be restrained and corrected because Defendants' communication threatens the choice of remedies available to the putative class members—to join the *Anaya* Rule 23 class action, or join the Kutzback nationwide collective action and suffer the consequences of threatened termination. In reality, the Unloaders did not need to make a choice—because they could simultaneously join the *Anaya* class action which should not have included an FLSA release, as evidenced by Defendants' eventual stipulation, and the Kutzback Nationwide Collective action that is exclusively brought under FLSA violations—and Defendants are also prohibited by law from retaliating against the participation of this collective action. The Courts have long established policies in class and collective actions to protect class members from communications that threatens the choice of remedies available to class members. *In re Sch. Asbestos Litig.,* 842 F.2d 671, 683 (3rd Cir.1988). Instead of receiving court-supervised notice that advises these putative class members that they may be entitled to various remedies, including but not limited to, unpaid overtime compensation, liquidated damages, attorneys' fees and costs, the putative collective action members were misled to believe that the *Anaya* class action released their FLSA claims.

Defendants' obvious intent in the coercive actions they undertook *during and before the Opt-in period* was to deny putative class members' access to this Court by using threats of

retaliatory termination against any employee that attempted to join the lawsuit, and communicating an impermissible release of FLSA claims in an unrelated litigation based exclusively on California state laws where such a release was fraudulently obtained. These actions are a blatant attempt to undermine this nationwide collective action by squelching participation from these putative class members.

To correct the prejudice caused by Defendants' conduct, the Court must allow Plaintiffs to send corrective notice to all prospective class members who did not initially Opt-in to the collective action. This corrective notice should be sent along with the initial notice and consent to join form, under the same timeline and implemented procedures that were previously approved by this Court.  The supplemental corrective notice should state:

> You are being sent this Corrective Notice if you previously declined to participate in this lawsuit, by failing to consent to join the collective action. Failing to consent to join has no effect on your ability to participate in this suit. You are allowed to make an informed choice as to whether to join. This decision is yours alone. Should you choose to participate in this action, please follow the instructions explained above.  Capstone Logistics, LLC and LMS Intellibound, LLC is prohibited from taking any retaliatory measures against by for participating in this lawsuit.  This means, among other things, Capstone Logistics, LLC will be prohibited from terminating your employment if you chose to join the collective action.  If you previously took part in the California class action entitled *Anaya* v. Progressive Logistics, LLC, you are still permitted to joint this collective action, because the *Anaya* collective action did not release any claims you may have under the Fair Labor Standards Act.

Accordingly, Plaintiff respectfully request the Court permit the Plaintiff to send corrective notice to all prospective class members who did not initially opt-in to the collective action; Order Defendants to post the corrective notice at Defendants' facilities at a location visible to employees; require Defendants bear the costs of sending the corrective notice and further pay Plaintiffs' reasonable attorneys' fees incurred in bringing this motion. *See Pacheco v. Aldeeb*, 127 F. Supp. 3d 694, 699 (W.D. Tex. 2015) (Permitting the plaintiff to send corrective notice,

requiring defendant to post the corrective notice at Defendants' facility, requiring defendant to bear the cost of sending the corrective notice and further pay plaintiffs' reasonable attorney's fees incurred in bringing the motion after finding that Defendants improperly discouraged their employees from joining suit); *See also Belt,* 299 F.Supp.2d at 669-670.

**2. Equitable Tolling is necessary to Prevent Extreme Prejudice to Putative Opt-in Plaintiffs Who Elected Not to Timely Opt in to the Case Due to Defendants' Improper and <u>Misleading Communications.</u>**

In a FLSA collective action, the statute of limitations continues to run for each Plaintiff until he or she files written consent to join the action. 29 U.S.C. § 256(b); *Baden–Winterwood v. Life Time Fitness,* 484 F.Supp.2d 822, 826 (S.D. Ohio 2007). Yet, this statute "establishes only a procedural limitations period." *Ott v. Midland–Ross Corp.,* 523 F.2d 1367, 1370 (6th Cir.1975), that is subject to equitable tolling, waiver and estoppel. *Id. accord E.E.O.C v. Kentucky State Police Dep't.,* 80 F.3d 1086, 1095 (6th Cir.1996) (the doctrine of equitable tolling is read into every federal statute). The equitable tolling doctrine "permits courts to extend the statute of limitations on a case-by-cases basis to prevent inequity." *Baden–Winterwood,* 484 F.Supp.2d at 826 (citing *Truitt v. County of Wayne,* 148 F.3d 644, 648 (6th Cir.1998)); *Roslies-Perez v. Superior Forestry Serv., Inc.*, 652 F. Supp. 2d 887, 898 (M.D. Tenn. 2009).

Defendants' communication severely prejudices the rights of the putative collective action members. Collective action members are required to "opt-in" to the action as opposed to the traditional opt-out procedures of a Rule 23 class action. More importantly, unlike the commencement of a Rule 23 class action, the commencement of an FLSA collective action under § 216(b) *does not toll the running of the applicable statute of limitations. See* 29 U.S.C. § 256(b) (emphasis added); *Cahill v. City of New Brunswick,* 99 F. Supp. 2d 464, 479 (D.N.J. 2000). As such, time is of the essence for the putative FLSA class members. Each day a putative class

member waits to opt-in, he or she may lose the ability to join the suit. And, each day a putative class member waits to opt-in, the putative class member loses a day's worth of unpaid wages. By threatening putative class members with termination, they will likely never opt-in. This Court must prevent other putative class members' rights from being prejudiced by restraining such conduct in the future by issuing corrective notice.  To fully cure the defect caused by Defendants' impermissible communications, Plaintiff respectfully requests the Court permit the Plaintiff issue corrective notice to all prospective class members who did not Opt-in to this collective action company wide, and toll their statute of limitations from the beginning of the initial Opt-in period beginning on May 8, 2015.

## **CONCLUSION**

Defendants' actions represent a clear undermining and defiance of the authority of this Court to ensure a fair and unbiased notice process in this action, and were misleading, coercive and highly prejudicial to the putative class members.  Plaintiff respectfully request the Court permit the Plaintiff to send corrective notice to all prospective class members who did not initially opt-in to the collective action; Toll their statute of limitations from the beginning of the initial Opt-in period beginning on May 8, 2015; Order Defendants to post the corrective notice at Defendants' facilities at a location visible to employees; Require Defendants bear the costs of sending the corrective notice and further pay Plaintiffs' reasonable attorneys' fees incurred in bringing this motion; Any further relief the Court deems just and proper.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.2(a)(1)(B), undersigned counsel has conferred with counsel for the Defendants and represent to the Court that Defendants oppose the relief sought by this motion.

Respectfully submitted this 1st day of December, 2016.

> **s/ MICHAEL HANNA**
> MICHAEL HANNA, Esquire
> Florida Bar No.: 85035
> ANDREW FRISCH, Esquire
> Florida Bar No.: 27777
> Morgan & Morgan, P.A.
> 600 N. Pine Island Rd., Suite 400
> Plantation, FL 33324
> Telephone: (954) 318-0268
> Facsimile:  (954) 333-3515
> Email: MHanna@forthepeople.com
> E-mail: AFrisch@forthepeople.com
>
> *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFIY that on this 1st day of December 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ MICHAEL N. HANNA*
Michael N. Hanna, Esquire