# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

MICHAEL KUTZBACK,
individually and on behalf of others
similarly situated,

        Plaintiff,

v.                                          Case No. 13-cv-2767-JTF-cgc

LMS INTELLIBOUND, LLC and
CAPSTONE LOGISTICS, LLC,

        Defendants.

## ORDER GRANTING MOTION TO TOLL STATUTE OF LIMITATIONS

Before the Court is Plaintiff, Michael Kutzback, and the Opt-In Plaintiffs' (Collectively "Plaintiffs") Motion to Toll Statute of Limitations. (D.E. #176) ("Second Motion to Toll"). The instant motion was referred to the United States Magistrate Judge for determination. (D.E.#180). For the reasons set forth herein, the instant motion is GRANTED.

**I. Background**

This case arises from allegations that Defendants LMS Intellibound, LLC ("LMS") and Capstone Logistics, LLC ("Capstone"),[1] who are third-party warehouse servicers providing logistic services for companies in the warehouse, distribution, and manufacturing industries, violated the Fair

---

[1] Plaintiff has named LMS and Capstone as co-Defendants. However, Defendants state that two separate companies—LMS and Progressive Logistics Services ("PLS")—merged to form Capstone in September 2011. (Def.'s Resp. to Mot. to Certify, Exh. 1 ("Gairhan Decl.") ¶ 5). For purposes of clarity, the Court will simply refer to LMS and Capstone as "the Company" or "Defendants."

Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*., by failing to pay proper overtime and minimum wages. (Am. Compl. ¶¶ 19, 51-69). Plaintiff filed his initial Complaint on October 2, 2013, which he later amended on January 3, 2014.

Plaintiff alleges that Defendants operate approximately 239 locations nationwide. (*Id.* ¶ 20). Plaintiff alleges that he was hired to work as a non-exempt "Unloader," otherwise known as a "Lumper" (hereinafter "Unloader"), in or about June 2011. (*Id.* ¶ 21). Plaintiff alleges that he worked as a non-exempt Unloader until August 2012, during which time he was compensated on a production basis as determined by the number and weight of the trucks unloaded. (*Id.* ¶ 24). Plaintiff alleges that, during all times relevant to his claims, he worked in excess of forty hours within a workweek but was not properly compensated for all of his overtime hours. (*Id.* ¶¶ 25-27). Specifically, Plaintiff alleges that Defendants' "Team Leads" and/or Managers "systematically and consistently clocked-out its Unloaders while still working, resulting in off-the-clock hours worked." (*Id.* ¶ 28). Plaintiff alleges that the "pattern and practice of clocking-out Unloaders while still working is a nationwide practice." (*Id.* ¶ 29). Plaintiff alleges that these practices resulted in a failure to pay both overtime and minimum wages in violation of the FLSA from June 2011 to present. (*Id.* ¶¶ 31-34). Plaintiff further alleges that Defendants have failed to maintain proper time records as mandated by the FLSA. (*Id.* ¶ 34d).

As to the proposed collective action, Plaintiff alleges that he and the Opt-in Plaintiffs are or were all non-exempt Unloaders employed Defendants and that they performed the same or similar job duties as one another. (*Id.* ¶ 37). Plaintiff alleges that all of these non-exempt Unloaders were paid in the same manner, namely on a by-the-truck or piece-rate basis. (*Id.* ¶ 38). Plaintiff alleges that Defendants uniformly require as their policy or practice all proposed opt-in plaintiffs to work

2

off the clock in the aforementioned manner, thus failing to pay them their FLSA-mandated minimum wages and/or overtime wages. (*Id.* ¶¶ 39-42). Thus, Plaintiff's Amended Complaint proposes that the proper collective action members should be defined as follows:

> All production-only "Unloaders" (a/k/a "Lumpers") who worked for Defendants, nationwide, within the last three years, who worked in excess of 40 hours in one or more workweeks and were not compensated at one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in one or more workweeks and were not compensated at a rate at least equivalent to the federal minimum wage in one or more workweeks as required by the FLSA.

As to the causes of action, Count I alleges that Defendants violated Sections 207 and 211 of the FLSA, 29 U.S.C. §§ 207 & 211, and 29 C.F.R. §§ 516.2 & 516.4 by failing to compensate Plaintiff and the proposed opt-in plaintiffs for the overtime hours worked and by failing to maintain proper time records. Count II alleges that Defendants violated Section 206 of the FLSA, 29 U.S.C. § 206, by failing to compensate Plaintiff and the proposed opt-in plaintiffs the federally mandated minimum wage. Count III requests declaratory relief under the FLSA and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

On February 18, 2014, Plaintiff filed a Motion to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members ("Motion to Certify"). (D.E. #43). On October 10, 2014, Plaintiff filed a Motion to Toll asserting that the statute of limitations should be tolled for potential opt-in plaintiffs as of February 18, 2014, the date of the filing of the Motion to Certify ("Motion to Toll"). (D.E. #64). On October 24, 2014, Defendants filed a Response to Plaintiff's Motion to Toll arguing that the "extraordinary" relief requested by Plaintiff is not consistent with the statutory scheme set forth under the FLSA. (D.E. #65). Defendants further asserted that tolling was inappropriate because nothing has prevented or is preventing any potentially aggrieved

individuals from pursuing their claims by filing their own suits or opting-in to this action. On December 16, 2014, the Magistrate Judge issued a Report and Recommendation on the Motion to Certify and Motion to Toll. As to the Motion to Certify, the Magistrate Judge recommended that the collective action should be conditionally certified. As to the Motion to Toll, the Magistrate Judge recommended that it should be denied without prejudice. The Report and Recommendation reasoned that there has been uncertainty about applying the doctrine to unidentified potential opt-in plaintiffs and that, "[i]f and when potential plaintiffs whose claims would otherwise be timebarred choose to opt into this class, they may apprise the Court of their circumstances and individually move for equitable tolling." (D.E. #68 at 25) (quoting *Tiffany Montgomery v. Decatur County General Hosp.*, No. 1:11-cv-01096-JDB-egb, slip op. at 15 (W.D. Tenn. Mar. 19, 2012)). On March 25, 2015, the District Court adopted the Magistrate Judge's Report and Recommendation.[2]

On July 15, 2016, Plaintiff filed the Second Motion to Toll arguing that, while the universe of Opt-in Plaintiffs claims would be barred in whole or in part was unknown at the time Plaintiff filed his initial Motion to Toll, there is now a "known and definite certainty that many of the current Opt-ins' claims would be barred in the absence of any order tolling their statute of limitations." Plaintiff asserts that, in the absence of tolling, at least 144 current Opt-in Plaintiffs' claims would be completely time-barred and extinguished. (*See* Second Mot. to Toll, Exh A). Plaintiff further argues that he is currently unable to identify every single Opt-in Plaintiff by name who would be adversely impacted if his or her statute of limitations were not tolled, in part because Defendants have not provided complete start and end dates for each Opt-in Plaintiff for him to ascertain precisely

---

[2] Although the Court did not explicitly adopt the Magistrate Judge's recommendation as to the Motion to Toll, no party objected to it and the District Judge concluded that it was not clearly erroneous and should be adopted in full.

4

who would be adversely impacted if the statute of limitations were not tolled. Plaintiff requests that the statute of limitations be tolled from the date he filed his Motion to Conditionally Certify until the Court ruled on the motion—a period of 400 days.

On August 1, 2016, Defendants filed their Response in opposition to the Second Motion to Toll. Defendants assert that Plaintiff's request is extraordinary, that it is not supported by statute or case law, and that it fails to put forth any new or material facts or changes in the law since the Court previously denied his Motion to Toll. Defendants argue that, contrary to the Magistrate Judge's prior Report and Recommendation, Plaintiff has not "individually move[d]" for tolling by apprising the Court of individual opt-in Plaintiff's circumstances. Instead, Defendants argue that Plaintiff merely reiterates the arguments that the Court previously rejected.

## II. Analysis

Under the FLSA, "[n]o employee shall be a party plaintiff to any [action] unless he gives consent in writing to become such a party and such is filed in the court in which the suit is brought." 29 U.S.C. § 216; *EEOC v. Chrysler Corp.*, 546 F. Supp. 54 (E.D.Mich. 1982), *affirmed*, 733 F.2d 1183 (6th Cir. 1984) (concluding that the filing of consent does not relate back to the date the original complaint was filed). To opt in to an FLSA collective action, written consent must be filed within the statute of limitations set forth in 29 U.S.C. § 255. Thus, the filing of the complaint does not stop the statute of limitations from running for individuals other than the complainant(s); instead, the statute of limitations will continue to run as to other potential opt-in plaintiffs unless or until he or she files written consent to opt into the collective action. *Kathy Brown v. Consolidated Restaurant Operations, Inc.*, No. 3:12-00788, 2013 WL 4804780, at *8 (M.D. Tenn. Sept. 6, 2013). Section 255, however, only serves as "a procedural limitation period under the Act," *Ott v. Midland-*

5

*Ross Corp.*, 523 F.2d 1367 (6th Cir. 1975), and is thus subject to equitable measures such as tolling, *Owens v. Bethlehem Mines Corp.*, 630 F. Supp. 309, 311 (S.D.W.V. 1986) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982)).

"Equitable tolling is an extraordinary remedy that is sparingly applied and concerns cases involving extraordinary circumstances." *Bennett v. Runyon*, No. 96-5532, 1997 WL 133337, at *1 (Mar. 21, 1997) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently; and, (2) that some extraordinary circumstance stood in his way." *Menominee Indian Tribe of Wisconsin v. United States*, 136 S.Ct. 750, 755-56 (2016) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010); *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780 (6th Cir. 2016).

The United States Court of Appeals has set forth five non-exhaustive factors to consider in applying the doctrine of equitable tolling: (1) lack of notice of the filing requirement; (2) lack of constructive notice of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and, (5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement. *Townsend v. Social Sec. Admin.*, 486 F.3d 127, 132 (6th Cir. 2007) (citing *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 376 (6th Cir. 2002)). Prejudice to the defendant should only be considered if other factors are met. *Id*. (citing *Dunlap v. United States*, 250 F.3d 1001, 1009 (6th Cir.), *cert. denied*, 534 U.S. 1057 (2001)). Further, the five-factor test is not necessarily comprehensive, and equitable tolling must necessarily be determined on a case-by-case basis. *Id*. (citing *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)).

In the instant case, Plaintiff previously filed his Motion to Toll, which the Court denied

relying upon *Montgomery*, concluding as follows: "[i]f and when potential plaintiffs whose claims would otherwise be time-barred choose to opt-in to this class, they may apprise the court of their circumstances and individually move for equitable tolling." The Second Motion to Toll does not individually move for equitable tolling; however, Plaintiff states as follows regarding the renewed motion: "While the universe of Opt-in Plaintiffs was previously unknown and thus whether such Opt-in Plaintiffs claims would be barred [in] whole or in part was unknown at the time Plaintiff[] filed his initial Motion to Toll, there is now a known and definite certainty that many of the current Opt-ins' claims would be barred in the absence of any order tolling the statute of limitations." Plaintiff further notes that, to date, Defendants have not yet provided complete start and end dates for each Opt-in Plaintiff, and thus Plaintiff is unable to ascertain all individuals who would be adversely affected if the statute of limitations is not tolled. Yet Plaintiff can narrow the class of potential Opt-in Plaintiffs to those who would meet certain distinct criteria.[3] Defendants argue that, by failing to individually move for equitable tolling, Plaintiff is merely raising the same issue as his Motion to Toll. Upon review, the Court finds that the "known and definite certainty" of a class of

---

[3] Plaintiff sets forth as follows regarding the class of potential Opt-In Plaintiffs: "While Plaintiff is unable to identify every single Opt-in Plaintiff by name would be adversely impacted if his or her statute of limitations were not tolled, by function of law any Opt-in Plaintiff who worked for the Defendants in at least one week more than two (2) years prior to filing their consent to join but within 161 weeks (i.e. 2 years plus 400 days) in the case could be adversely impacted. Likewise, any Opt-in Plaintiff who worked for Defendants in at least one week more than three years prior to the date on which they filed their consent to join but within 213 weeks (i.e. 3 years + 400 days) of same would be negatively impacted and prejudiced."

Plaintiff sets forth two potential categories of potential Opt-in Plaintiffs because the "Court has not yet made a determination as to whether the statute of limitations applicable to the instant claims is 2 years or whether the longer 3 year statute of limitations shall apply due to the willful/reckless nature of Defendants' FLSA violations here," which is an issue not before the Court in the instant motion.

Opt-in Plaintiffs, while not individual, is specific enough for the Court to address the issue on its merits.

Proceeding to the five-factor test for equitable tolling, the Court must first consider whether the Opt-in Plaintiffs lacked actual notice of the filing requirement. However, before the Court can consider any lack of notice, it must consider this question: must the Opt-in Plaintiffs only have actual notice of the facts and circumstances of their employment that form the basis of their FLSA claims, as Plaintiff asserts? *See Tayna Young v. Dollar Tree Stores, Inc.*, No. 11-CV-REB-MJW, 2013 WL 1223613, at *1 (D. Colo. Mar. 25, 2013) ("Generally, potential opt-in plaintiffs are presumed to be aware of the facts and circumstances of their employment . . . that form the basis of each plaintiff's FLSA claim"); *Darlene Lewis v. Nevada Property 1, LLC*, No. 2:12-cv-01564-MMD-GWF, at *14-15 (D. Nev. Jan. 22, 2013) (concluding that courts do not generally grant motions to toll the running of the statute of limitations where the defendant has filed a non-frivolous opposition to the motion for conditional certification of the FLSA class and there has been no undue delay by the court in deciding the motion because no opt-in plaintiffs were precluded from asserting his or her claims). Or must the Opt-in Plaintiffs have actual notice of the Plaintiff's filing of the conditionally certified collective action, as Plaintiff asserts? *See Stranksy v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181-82 (D. Colo. 2012) ("Although early notice to Opt-in Plaintiffs in a collective action such as this is favored, such notice was not possible here as Defendant is in sole possession of the names and last known physical addresses of all potential Opt-in Plaintiffs. As such, allowing Opt-in Plaintiffs' claims to diminish or expire due to circumstances beyond their control would be particularly unjust."); *Owens v. Bethlehem Mines* Corp., 630 F. Supp. 309 (S.D.W.V. Mar. 17, 1986) (citing *Partlow v. Jewish Orphans' Home of Southern Cal., Inc.*, 645 F.2d 757, 760-61 (9th Cir.

1981), *abrogated on other grounds by*, *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)) (finding equitable tolling is appropriate during the pendency of a motion to certify because, had an earlier decision been made on the certification question, the plaintiffs could have opted in before their claims were barred).

Upon consideration of these two differing viewpoints on the issue of notice, the Court is persuaded by the reasoning of the Courts that require actual notice of the pendency of the collective action. Specifically, the Court finds that equitable tolling is appropriate when potential opt-in plaintiffs' claims diminished and expired by the day without them having any actual knowledge of the pending action. Therefore, the Court concludes that this factor weighs in favor of permitting equitable tolling.

Second, the Court must consider whether the Opt-in Plaintiffs had constructive notice of the filing requirement. "Constructive knowledge is knowledge that one using reasonable care or diligence should have." *Thompson v. Direct General Consumer Prods., Inc.*, No. 3:12-cv-1093, 2014 WL 884494, at *8 (M.D. Tenn. Mar. 5, 2014) (internal quotations omitted) (citing Black's Law Dictionary 950 (9th ed. 2009). As other courts have opined, "the exercise of reasonable care or diligence would not have made putative class members aware of this case or the operation of the FLSA's limitations period on their claims" because "notice has not issued due to delays potential opt-in plaintiffs did not cause." *Id*. Defendants argue that potential opt-in plaintiffs had constructive notice of their FLSA causes of action based upon the posting of required wage and hour posters in the workplace. Yet, as the Court has concluded that the appropriate notice to be considered is notice of the FLSA collective action, not notice of the facts and circumstances that may give rise to an FLSA claim, the Court finds that there is no basis for concluding that the Opt-in Plaintiffs had

9

constructive notice. Thus, the Court concludes that this factor weighs in favor of permitting equitable tolling.

Third, the Court must consider whether the Opt-in Plaintiffs acted diligently in pursuing their rights. Plaintiff avers that, absent any notice to the potential Opt-in Plaintiffs of the filing of a FLSA collective action, they should not be held to any expectation that they act diligently. Plaintiff also contends that the Motion to Conditionally Certify was filed within one month after the filing of the Amended Complaint, which he argues demonstrates that he was diligent in seeking conditional certification and providing notice to potential opt-in plaintiffs. Consistent with the reasoning above on the issue of notice, the Court concludes that Plaintiffs sought conditional certification promptly and that the potential opt-in plaintiffs should not be expected to exercise any further diligence before notice of the collective action is provided to them. Similarly, the Court must consider under the fourth prong the Opt-In Plaintiffs' reasonableness in remaining ignorant of the need to opt into this action, and the Court finds the Opt-in Plaintiffs' action to be abundantly reasonable in advance of notice provided on the existence of this action.

Finally, the Court must consider whether Defendants will be prejudiced by the tolling of the statute of limitations. Plaintiffs assert that Defendants were aware of the potential scope of their liability upon the filing of the Complaint, and courts have held that such awareness is sufficient to conclude that they are not prejudiced by equitable tolling. *See Stickle v. SCI Western Mkt. Support Ctr., L.P.*, 2008 WL 4446539 (D. Ariz. Sept. 30, 2008) (citing *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 828 (S.D. Ohio May 1, 2007)). Furthermore, Defendants do not explicitly address any prejudice that they may suffer as a result of the tolling of the statute of limitations. The Court agrees that awareness of the potential scope of liability is critical to the

consideration of prejudice, as the purposes of a statute of limitations is "to ensure fairness to defendants by notifying defendants of the claims they must defend . . ." *Baden-Winterwood*, 484 F. Supp. 2d at 828 (citing *American Pipe and Construction v. Utah*, 414 U.S. 538, 561 (1974) (Blackmun, J., concurring)). As it appears to the Court that Defendants should have been aware of the potential scope of their liability from the date the Complaint was filed, the Court finds that Defendants will not be prejudiced by the tolling of the statute of limitations.

These conclusions are also consistent with other courts' rulings that delays during the collective-action certification process constitute "extraordinary circumstances" beyond plaintiffs' control, making them appropriate for the application of equitable tolling. *See Thompson v. Direct Gen. Consumer Prods., Inc.*, No. 3:12-cv-1093, 2014 WL 884494, at *8-9 (M.D. Tenn. Mar. 5, 2014) (concluding that a fifteen-month period between the motion for conditional certification and the court's ruling upon it was an extraordinary circumstance warranting equitable tolling because, during that time, the potential opt-in plaintiffs did not have actual notice of the action); *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 860-61 (N.D. Ill. June 11, 2013) (concluding that a period of longer than "a few months after the motion has been fully briefed" is an extraordinary circumstances warranting equitable tolling to prevent opt-in plaintiffs from "los[ing] out on the potential benefits" of the action).

As all five factors weigh in favor of tolling the statute of limitations, and as the Court concludes that such a delay constitutes an extraordinary circumstance beyond the Opt-in Plaintiffs control, the Court must now consider the appropriate length for which the statute of limitations should be tolled. Plaintiffs contend that it should be tolled for 400 days—the time from the filing of the Motion to Certify until the District Court's ruling thereupon. Defendants assert that the ruling

would have necessarily taken some period of time and that 400 days is too long of a period for the statute of limitations to be equitably tolled. Defendants also suggest that the Motion to Certify was not fully briefed until April 16, 2014 and that less than one year passed while the Motion to Certify was ripe. Defendants further suggest that, "[g]iven the size of the class Plaintiff moved to certify, the complexity of the case, and Defendants' good faith arguments in opposition to the Motion to Certify, the length of time that passed before the Court ruled on the Motion was not 'extraordinary,' but rather is in line with the ordinary course of litigation under the FLSA statutory scheme." Although the Motion to Certify was ripe for less than a year, the Court finds it to be more availing that the Opt-in Plaintiffs lacked notice of the pending action existed throughout the pendency of the Motion to Certify.

Thus, the Court concludes that it is appropriate for the statute of limitations to be tolled as to all potential Opt-in Plaintiffs who ultimately filed a consent to join the case for 400 days to account for the period from February 18, 2014 when the Motion to Certify was filed until March 25, 2015 when the District Court granted the motion.

## III. Conclusion

For the reasons set forth within, Plaintiff's Motion to Toll Statute of Limitations is hereby GRANTED.

**IT IS SO ORDERED** this 10th day of February, 2017.

                                             s/ Charmiane G. Claxton
                                             CHARMIANE G. CLAXTON
                                             UNITED STATES MAGISTRATE JUDGE