**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL KUTZBACK, individually<br>and on behalf of himself and others<br>similarly situated,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:13-cv-02767-JTF-cgc** |
| | ) | |
| **LMS INTELLIBOUND, LLC, a foreign** | ) | |
| **Limited Liability Company and** | ) | |
| **CAPSTONE LOGISTICS, LLC, a Domestic** | ) | |
| **Limited Liability Company,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER DENYING DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S
ORDER FOR PHASE II DAMAGES DISCOVERY**

Before the Court is Defendants' Objections to the Magistrate Judge's Order For Phase II

Damages Discovery ("Objections"), filed on November 6, 2018. (ECF No. 385.) Plaintiffs filed

a Response on December 4, 2018, (ECF No. 397), and Defendants filed a Reply on January 14,

2019. (ECF No. 401.) For the reasons stated below, the Court **DENIES** Defendants' Objections.

<u>STATEMENT OF FACTS</u>

The Court incorporates its Statement of Facts from its Order Denying Defendants' Motion

for Partial Summary Judgment on the Claims of the California Opt-In Plaintiffs; Order Denying

In Part Defendants' Motion to Decertify the Collective Action; and Order Denying Defendants'

Motion for Summary Judgment on the Claims of Plaintiff Michael Kutzback. (ECF No. 357.)

PROCEDURAL HISTORY

The Court conditionally certified the Collective Action on March 25, 2015. (ECF No. 78.) Notices were issued to Unloaders who had worked at any of Defendants' 262 nationwide locations during the previous three years. Accordingly, these parties were allowed to file notices of consent to join the action, pursuant to 29 U.S.C. § 216(b). (ECF No. 78.) Approximately 3,381 individuals elected to opt into the proposed class. Approximately 437 of the 3,381 Opt-In parties were randomly chosen to participate in the first stage of discovery. However, only a few of these parties initially appeared as scheduled for depositions, resulting in the Magistrate Judge extending the time for the parties to depose 52 additional parties to June 13, 2017. (ECF Nos. 256 & 268.) After an extended period of discovery and further depositions, the parties filed several motions, including: Defendants' Motion for Partial Summary Judgment on the Claims of the California Opt-In Plaintiffs, Defendants' Motion to Decertify the Collective Action, and Defendants' Motion for Summary Judgment on the Claims of Plaintiff Michael Kutzback. On March 16, 2018, the Court entered an Order Denying Defendants' Motion for Partial Summary Judgment on the Claims of the California Opt-In Plaintiffs; Order Denying In Part Defendants' Motion to Decertify the Collective Action; and Order Denying Defendants' Motion for Summary Judgment on the Claims of Plaintiff Michael Kutzback. (ECF No. 357.)

On April 13, 2018, the Court held a status conference and set a deadline of April 27, 2018 for the parties to file a Notice with the Court regarding proposed deadlines for damages discovery and further mediation. (ECF Nos. 359 & 360.) That deadline was extended twice. (ECF Nos. 363 & 365.) On May 31, 2018, Defendants filed a Motion for Entry of Defendants' Proposed Scheduling Order for Phase II Damages Discovery ("Defendants' Proposed Scheduling Order") and Plaintiffs filed a Motion for Entry of Plaintiffs' Proposed Scheduling Order for Phase II

Damages Discovery, styled as "Plaintiffs' Memorandum Regarding Additional Damages Discovery" ("Plaintiffs' Proposed Scheduling Order"). (ECF Nos. 366 & 368.) The Court referred those motions to the assigned Magistrate Judge on July 26, 2018 pursuant to 28 U.S.C. § 636(b)(1)(A). (ECF No. 373.) The Magistrate Judge held a motion hearing on October 9, 2018 and entered an Order for Phase II Damages Discovery ("Order") on October 23, 2018. (ECF Nos. 379 & 380.) Defendants then filed their Objections. (ECF No. 385.)

<u>STANDARD OF REVIEW</u>

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, a magistrate judge has the authority to hear and decide "pretrial matters not dispositive of a party's claim or defense." Fed. R. Civ. P. 72(a). If a party timely files objections, the district judge must "consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." *Id.* Findings of fact must also be reviewed for clear error. Clear error is present when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). The question is "whether there is evidence in the record to support the [magistrate judge's] finding, and whether its construction of that evidence is a reasonable one." *Id.* A magistrate judge's legal conclusions must be reviewed under the "contrary to the law" standard of review, which requires the district court to determine whether the magistrate judge "'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citation omitted). "[M]agistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Goree v. UPS*, No. 14-cv-2505-SHL-dkv, 2015 U.S. Dist. LEXIS 191836, at *8–9 (W.D. Tenn. Oct. 30, 2015) (citation omitted).

Pursuant to Rule 72(b)(1), in dispositive matters, the magistrate judge is limited to entering a recommended disposition and proposed findings of fact.  Fed. R. Civ. P. 72(b)(1).  The district judge must "determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

Defendants' first objection relates to the standard of review this Court should apply to the Magistrate Judge's Order.  Their argument proceeds as follows.  The Magistrate Judge's Order "fundamentally reshaped" the Court's decertification ruling by "effectively expand[ing] membership in the collective action from full-time Opt-In Unloaders *with off-the-clock claims* to full-time Opt-In Unloaders *whether or not they have off-the-clock claims*."  (ECF No. 385, 8.) Because the Magistrate Judge's Order ignored the Court's decertification ruling, Defendants must have the opportunity to conduct discovery as to each Opt-In Plaintiff to determine whether each individual Opt-In Plaintiff has an off-the-clock claim.  However, the Magistrate Judge's Order prevents Defendants from taking individualized discovery from each Opt-In Plaintiff.  This hindrance of Defendants' ability to contest whether each Opt-In Plaintiff satisfies the Court's collective action membership criteria affects Defendants' claim or defense.  Thus, the Magistrate Judge's Order "functionally decides a dispositive issue that is beyond the Magistrate Judge's authority to determine" and must be reviewed *do novo*.  (*Id.* at 9.)

For the following reasons, the Court finds that the Magistrate Judge's Order does not functionally decide a dispositive issue and is not subject to *de novo* review.  The Court disagrees with Defendants' objection that the Magistrate Judge's Order "fundamentally reshaped" and "functionally eviscerate[d] the Court's decertification ruling."  (*Id.* at 6.)  Defendants posit that by

4

denying them the right to take individualized discovery of all Opt-In Plaintiffs to determine whether each one qualifies for membership, the Order "effectively expanded membership in this collective action from full-time Opt-In Unloaders *with off-the-clock claims* to full-time Opt-In Unloaders *whether or not they have off-the-clock claims*." (ECF No. 385, 8.) The Court agrees with Plaintiff that Defendants are simply seeking the opportunity to explore whether the Opt-In Plaintiffs are similarly situated. (ECF No. 397, 8.) Defendants had the opportunity to collect discovery and present their arguments regarding Opt-In Plaintiffs being not similarly situated during the decertification stage. When Defendants raised this argument during the October 9, 2018 damages discovery hearing, the Magistrate Judge explained that this case is past the decertification stage. This Court has already concluded that some Opt-In Plaintiffs were subjected to a common policy, spoken or unspoken, that required them to work off-the-clock. (ECF No. 357, 12–19.) Accordingly, this Court partially certified the collective action to include only the claims of full-time Opt-In Unloaders with off-the-clock claims. (*Id.* at 22.) Inherent in the Court's partial certification is the fact that those who do *not* fit within the specified membership criteria do not qualify for membership and are thus not included in the collective action. If full-time Opt-In Unloaders do not have off-the-clock claims, they are not part of the collective action and are not subject to Phase II damages discovery. Thus, the Magistrate Judge's Order, in setting forth limitations on Phase II damages discovery, did not ignore the Court's ruling. As such, Defendants' argument that they must be afforded the opportunity to conduct individualized discovery as to all Opt-In Plaintiffs to identify the people without off-the-clock claims is unfounded.

Moreover, Defendants' argument for *de novo* review of the Magistrate Judge's Order is insufficiently substantiated by case law. Title 28 U.S.C. § 636(b)(1)(A) sets forth a non-exhaustive list of dispositive matters that magistrate judges do not have authority to determine: "a motion for

injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1)(A). Because the list of dispositive motions set forth in § 636(b)(1)(A) is non-exhaustive, the Sixth Circuit employs a "functional equivalency test to see if a particular motion has the same practical effect as a recognized dispositive motion." *Vogel v. United States Office Prods. Co.*, 258 F.3d 509, 517 (6th Cir. 2011). Under this approach, a court must examine "the motion's potential effect on litigation." *Id.* at 515. Accordingly, any motion not listed in § 636(b)(1)(A) as dispositive but functionally equivalent to a listed dispositive motion is considered dispositive.

Rule 16(b) Scheduling Conferences, and resulting Scheduling Orders, are characterized as discovery matters appropriately handled by the magistrate judge. *See* Fed. R. Civ. P 16(b)(1); LR 16.1(b) ("All scheduling and settlement conferences may be conducted by the District Judge or Magistrate Judge to whom the case is assigned . . . ."). Discovery matters are typically considered non-dispositive and thus should be reviewed by the district court under the clearly erroneous standard. *See Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952, 954 (6th Cir. 1985) (stating that judges may rule directly on non-dispositive, pretrial motions such as discovery motions). Defendants cite no case law indicating that discovery matters, specifically scheduling orders, are the functional equivalents of any listed dispositive motion.[1] The Court also cannot find such a

---

[1] Defendant cites *In re Airline Ticket Comm'n Antitrust Litig.* to support his argument that the Magistrate Judge's Order is dispositive. 918 F. Supp. 283, 285 (D. Minn. 1996). First, the Court notes that this is not a binding case, as it is from the District of Minnesota. Second, the case is not persuasive. While the court ultimately applied a *de novo* standard of review because the court agreed that the magistrate judge's order "trenche[d] heavily on an aspect of defendants' claimed defense," the court explicitly stated that "the Court declines to determine whether defendants' motion is dispositive." *Id.* at 285. Furthermore, the defendants were not seeking to conduct

case.  This lack of case law is indicative to the Court that a scheduling order is non-dispositive because there is otherwise an abundance of cases finding other types of motions to be dispositive.[2]

The Magistrate Judge's Order did not fundamentally reshape this Court's decertification ruling and expand membership in this collective action, nor is it the functional equivalent of a dispositive motion.  Accordingly, the Court will not apply Defendants' requested *de novo* standard of review but rather will apply the clearly erroneous and contrary to the law standard of review.

ANALYSIS

I.      *Stipulation Agreement of the Parties*

Defendants argue that the Parties' Joint Stipulation Agreement is binding on the Court and that by "disregarding" it, the Magistrate Judge "rewr[o]te substantive aspects of a binding agreement among the Parties."  (ECF No. 385, 9.)  In Defendants' view, "[i]t was clear error and contrary to Sixth Circuit law for the Magistrate Judge to treat this issue as a mere procedural discovery matter subject to modification by the Court."  (*Id.* at 11.)  They believe the Magistrate Judge's Order "abridges [their] substantive right to discovery, and therefore to present, individual defenses to each Opt-In Plaintiff's claim for damages."  (*Id.*)  Plaintiffs, in response, argue that the

---

discovery of all Opt-In Plaintiffs; rather, the defendants sought to take "damage-related discovery from randomly selected travel agents and agencies."  *Id.*

[2] *See Callier v. Gray*, 167 F.3d 977, 981 (6th Cir. 1999) (holding that a motion for default judgment is the functional equivalent of a motion for involuntary dismissal); *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 169–70 (6th Cir. 1992) (holding that a motion to certify a district court order for interlocutory appeal is dispositive); *Curatola v. TitleMax of Tennessee, Inc.*, No. 1:16-cv-01293-JCB-egb, 2018 U.S. Dist. LEXIS 94824 (W.D. Tenn. June 6, 2018) (holding that a motion to compel arbitration is a motion for injunctive relief); *Hobson v. Mattis*, Case No. 3:16-cv-0774, 2017 U.S. Dist. LEXIS 66770 (E.D. Tenn. May 2, 2017) (holding that a motion to dismiss improper parties, styled as a motion to dismiss for lack of subject matter jurisdiction, is dispositive); *Meeks v. Schofield*, Case No. 3:12-cv-545, 2013 U.S. Dist. LEXIS 61463 (M.D. Tenn. April 30, 2013) (holding that a motion to intervene is dispositive as it is the functional equivalent of several of the enumerated dispositive motions). *But see Rosenbohm v. Cellco P'ship*, 2:17-cv-731, 2019 U.S. Dist. LEXIS 122999, at *3–4 (S.D. Ohio July 24, 2019) (reviewing a magistrate judge's scheduling order in a collective action as a non-dispositive matter).

trial court has discretion over the scope of discovery, which naturally includes the discretion to limit discovery in large and complex cases. (ECF No. 397, 12.) Importantly, Plaintiffs point out that in the Joint Stipulation Agreement, the Parties "included a clause stating that the plan may be amended by Court order." (*Id.*)

In the Magistrate Judge's Scheduling Order of December 11, 2013, the Parties were directed to "submit a supplemental discovery plan within 21 days of the Court's ruling on Plaintiffs' Motion for Conditional Certification." (ECF No. 21, 2.) The Court entered its ruling on Plaintiffs' Motion for Conditional Certification on March 25, 2015. (ECF No. 78.) During a status conference held on July 23, 2015, the Parties informed the Court that they would file a joint discovery plan. The plan was filed on August 19, 2015. (ECF Nos. 126, 136 & 137.) This is the document that Defendants inaccurately refer to in their Objections as the "Stipulation."

In the Joint Supplemental Discovery Plan ("the Discovery Plan"), the Parties agreed that "[a]ll Opt-In Plaintiffs, regardless of whether they are part of the representative sample, will be subject to damages discovery" following the Court's ruling on decertification and dispositive motions. (ECF No. 137, 6.) The Parties also agreed that "[t]his discovery plan may be amended by agreement of the Parties, or by Court order." (*Id.* at 7.) On March 16, 2019, the Court entered an Order Denying Defendants' Motion for Summary Judgment, Granting in Part and Denying in Part Defendants' Motion to Decertify Collective Action, and Denying Defendants' Motion for Summary Judgment on the Claims of Plaintiff Kutzback. (ECF No. 357.) The Parties then filed competing damages discovery plans after failing to agree to any joint discovery plan. (ECF Nos. 355 & 368.) The Magistrate Judge held a status conference and issued an Order in which she varied from the Parties' Joint Supplemental Discovery Plan in that she did not subject all Opt-In Plaintiffs to damages discovery. The Parties themselves gave the Court, and by extension the

Magistrate Judge, such authority.  (*See* ECF No. 137, 7) ("This discovery plan may be amended by agreement of the Parties, or by Court order.").  It is clear that the Magistrate Judge acted within her power to do so, and therefore did not abuse her discretion.

Notwithstanding the terms of the discovery plan, Defendants cannot escape the broad discretion a trial court has in setting the scope of discovery.  *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is *relevant* to the party's claim or defense and *proportional* to the needs of the case."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  In considering proportionality, the court must consider, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.* Additionally, a court must limit discovery if the court determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or if] the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C).  Here, the Magistrate Judge concluded, during the October 9, 2018 hearing, that individualized discovery of approximately 3,400 Opt-In Plaintiffs was unreasonable and burdensome.  Her decision to vary from the Parties' Discovery Plan conforms with Rule 26(b)(2)(C) and is not clear error and contrary to the law.  Accordingly, the Court denies Defendants' objection that the Magistrate Judge ignored the Parties' Discovery Plan.

II.    *Due Process Requires Full Damages Discovery*

Defendants' generally object to the Magistrate Judge's Order as a violation of their due process rights.  Defendants contend that they should be allowed to present individual defenses to each Opt-In Plaintiff.  Thus, they need to take individualized discovery of each Opt-In Plaintiff to identify those individuals against whom a defense may be asserted.  (ECF No. 385, 11.) Defendants argue the Magistrate Judge's Order impedes Defendants' ability to present such individual defenses in three ways.  (*Id.* at 13.)  First, the Order prevents Defendants from determining whether each Opt-In Plaintiff is a full-time Opt-In Unloader with off-the-clock claims. (*Id.* at 14.)  Second, the Order prevents Defendants from determining whether and to what extent each Opt-In Plaintiff suffered any alleged injury.  (*Id.* at 14–15.)  Third, the Order denies Defendants the ability to challenge the accuracy of Plaintiff's use of representative discovery.  (*Id.* at 15–16.)  Plaintiffs respond by explaining that the imposition of representative discovery in this case is correct and supported by Sixth Circuit case law.

The Court begins its analysis with Defendants' general argument that due process entitles them to present all possible defenses, thus forming the need for individualized discovery. Defendants are correct that due process requires an opportunity for parties to present every available defense.  *American Surety Co. v. Baldwin*, 287 U.S. 156, 168 (1932).  However, under the circumstances of this case, due process does not require individualized discovery of all Opt-In Plaintiffs, contrary to Defendants' contentions.

Defendants posit that the Supreme Court's ruling in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) that "the use of representative proof to establish damages fundamentally alters parties' substantive rights" necessarily means that Defendants must have the opportunity to conduct individualized discovery so as to not infringe upon their due process rights.  *Dukes*

involves a class action pursuant to Rule 23(a) and (b)(2), where the two main issues the Supreme Court addressed were whether the respondents satisfied the commonality requirement and whether the respondents' claims for backpay were improperly certified.

Defendants' review of *Dukes* mischaracterizes the portion of the analysis concerning backpay.  The Supreme Court reversed the Ninth Circuit, holding that Wal-Mart was entitled to individualized determinations of each employee's eligibility for backpay.  564 U.S. at 366.  However, the Supreme Court actually determined that Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class" and "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."  *Id.* at 360–361.  In other words, the Supreme Court reversed the Ninth Circuit because the class members asserted individualized monetary claims for backpay in their Rule 23(b)(2) certified class action and "[i]ndividualized monetary claims belong in Rule 23(b)(3)."  *Id.* at 362.  Individualized monetary claims cannot be asserted in Rule 23(b)(2) class actions because, among other reasons, Rule 23(b)(2) "does not require that class members be given notice and opt-out rights, presumably because it is thought (rightly or wrongly) that notice has no purpose when the class is mandatory, and that depriving people of their right to sue in this manner complies with the *Due Process Clause*."  *Id.* at 363.  The case at hand does not involve either a Rule 23(b)(2) or (b)(3) class action but a collective action under 29 U.S.C. § 216(b) of the FLSA.  Thus, Defendants' argument that they must be afforded the opportunity to conduct individualized discovery in this collective action so as to not infringe upon their due process rights lacks merit.

Defendants also base their argument on the generalization that "[t]he Sixth Circuit similarly has rejected attempts to determine damages by formula."  (ECF No. 385, 12.)  Defendants first cite *Davis v. Cintas Corp.*, 717 F.3d 476 (6th Cir. 2013), a case involving a class action made up

of women alleging gender discrimination in pay and promotion.  717 F.3d at 484.  The plaintiff moved for class certification under both Rule 23(b)(2) and Rule 23(b)(3), both of which the district court denied.  *Id.* at 489.  On appeal, the plaintiff only challenged the district court's denial of Rule 23(b)(2) class certification.  *Id.*  Thus, the Sixth Circuit did not address whether certification pursuant to Rule 23(b)(3) was appropriate.  Regarding Rule 23(b)(2) class certification, the district court denied certification and the Sixth Circuit affirmed such denial because the plaintiff sought front pay and back pay in addition to declaratory and injunctive relief.  *Id.*  The district court and the Sixth Circuit believed that front pay and back pay calculations "would necessarily predominate over requested declaratory or injunctive relief and the requested damages cannot be recovered pursuant to Rule 23(b)(2)."  *Id.* at 489–90 (quotations and citation omitted).  Because the plaintiff's "shortfall-based model" deprived the defendants of their right to present individual defenses, just like the plaintiff's "trial-by-formula" approach in *Dukes*, the Sixth Circuit concluded that the district court properly denied class certification under Rule 23(b)(2).

*Davis* is inapplicable to this case.  As the Supreme Court did in *Dukes*, the Sixth Circuit in *Davis* only took issue with non-individualized discovery because Rule 23(b)(2) only allows for individualized discovery.  However, this case is a certified collective action pursuant to 29 U.S.C. § 216(b) of the FLSA.  There is no Rule 23(b)(2) or (b)(3) certified class.  Thus, the *Davis* analysis is unhelpful.

Defendants also cite *Romberio v. UNUMProvident Corp.*, 385 F. App'x 423, 429 (6th Cir. 2009), which involves another Rule 23(b)(2) class.  The issue in that case was whether the plaintiffs satisfied the typicality requirement of Rule 23(a).  *Id.* at 529.  The Sixth Circuit did not discuss whether defendants in a collective action are entitled to the opportunity to conduct individualized

12

discovery so as not to infringe upon due process rights.  This Court does not find this citation to be useful.

Lastly, the Court notes that courts in the Sixth Circuit, and courts in other circuits, have repeatedly held that representative discovery does not violate a defendant's due process rights.[3] *See, e.g., Gentrup v. Renovo Servs.*, No. 1:07-cv-430, 2010 U.S. Dist. LEXIS 143203, at *24–25 (S.D. Ohio Aug. 17, 2010) (holding that representative discovery did not violate the defendants' due process rights, despite the defendants' argument that "if only representative discovery is allowed, they may be found liable for damages to individual Plaintiffs against whom they may have had viable, yet factually undeveloped defenses"); *see also Belcher v. Shoney's, Inc.*, 30 F. Supp. 2d 1010, 1024 (M.D. Tenn. 1998); *Nelson v. Am. Std., Inc.*, CASE NO. 2:07-CV-10-TJW-CE, 2009 U.S. Dist. LEXIS 113448, at *8–9 (E.D. Tex. Dec. 4, 2009); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188, 190–92 (S.D.N.Y. 2014).  Based upon Defendants' general objection, the Court does not agree that the Magistrate Judge's Order infringes upon their due process rights.

### Denial of Opportunity to Determine Proper Members of the Collective Action

Defendants object that the Magistrate Judge's Order impedes their ability to present defenses to Opt-In Plaintiffs' claims because "without discovery from each Opt-In Plaintiff," the Order prohibits them from "assess[ing] whether each Opt-In Plaintiff has an 'off-the-clock' claim and otherwise meets criteria for membership in the collective action."  (ECF No. 385, 14.) Defendants quote *United States v. City of New York*, 276 F.R.D. 22, 40 (E.D.N.Y. 2011) to support their position:

> The same subjective considerations that prevented the court from determining mitigation on a classwide basis prevents the court from determining the aggregate value of damages required to compensate all victims of the City's discrimination

---

[3] Defendants do not cite any cases to support their position that representative discovery, in a collective action, violates one's due process rights to present individual defenses.

> for the intangible losses they have suffered in one classwide proceeding.  Unlike the determination of the pay that a claimant would have received if he or she had become a firefighter, determinations of fact and extent of a claimant's noneconomic losses require an individualized assessment.

*Id. City of New York* relates to whether the court should "reconsider its determination that Plaintiff-Intervenors' claims for compensatory damages for noneconomic losses raise common questions of fact and law."  *Id.* at 35.  It does not deal with the issue of whether representative discovery is appropriate when conducting damages discovery in a collective action.  For that reason, *City of New York* is not analogous to our issue and is not helpful to the Court.

More importantly, Defendants made this *exact* argument previously when they maintained that the Court should apply a *de novo* standard of review to the Magistrate Judge's Order.  The Court re-explains that the decertification stage was the stage during which Defendants had the opportunity to conduct discovery and present their arguments regarding Opt-In Plaintiffs being not similarly situated.  During the decertification stage, courts consider "any need to distinguish and exclude prospective opt-in parties from the class."  *Kutzback v. LMS Intellibound, LLC*, Case No. 2:13-cv-2767-JTF-cgc, 2015 U.S. Dist. LEXIS 37946, at *14 (W.D. Tenn. Mar. 25, 2015).  This case is past the decertification stage, and the Court has already concluded that some Opt-In Plaintiffs were sufficiently similarly situated for the action to proceed collectively.  (ECF No. 357, 12–19.)  Accordingly, this Court partially certified the collective action to include only the claims of full-time Opt-In Unloaders with off-the-clock claims.  (*Id.* at 22.)  Given the procedural posture of the case, the Court does not agree with Defendants' objections that the Magistrate Judge's Order denied them the opportunity to determine who is a proper member of the collective action in violation of their due process rights.

**Denial of Opportunity to Determine Each Opt-In Plaintiff's Extent of Injury**

Defendants object that the Magistrate Judge's Order leaves them with "no mechanism to identify whether and to what extent each Opt-In Plaintiff suffered any alleged injury supposedly stemming from exposure to Defendants' alleged unlawful policies or practices."  (ECF No. 385, 14.)  Defendants cite two cases to support their position—*Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611 (S.D. Cal. 2014), and *Solsol v. Scrub, Inc.*, No. 13 CV 7652, 2017 U.S. Dist. LEXIS 80801, at *8 (N.D. Ill. May 23, 2017).  The Court has reviewed both cases and observes that both involve a district court decertifying a collective action because the collective action members were not similarly situated.  As discussed above, this Court has already denied Defendants' motion to decertify the class.  This Court found that the full-time Opt-In Unloaders with off-the-clock claims were similarly situated because there was "sufficient evidence of a unified policy, spoken or unspoken, showing a common and widespread practice of FLSA violations."  (ECF No. 357, 19.)  As the Sixth Circuit has explained, "the collective-action framework presumes that similarly situated employees are representative of each other . . . ."  *Monroe v. FTS USA, LCC*, 860 F.3d 389, 409 (6th Cir. 2017) (citation omitted).  Thus, the 15% of Opt-In Plaintiffs who are subject to Phase II damages discovery are illustrative of the remaining Opt-In Plaintiffs.  The Court does not agree with Defendants that the Magistrate Judge violated their due process rights by denying them the opportunity to contest whether any individual Opt-In Plaintiff was subjected to the alleged unlawful policies.

**Denial of Opportunity to Challenge Accuracy of Plaintiff's Use of Representative Discovery**

Defendants object to the Magistrate Judge's Order to the extent it denies them the ability to show that Plaintiffs' proof of damages is not representative.  (ECF No. 385, 15.)  In turn, Defendants' rights to present defenses based on the nature of the Opt-In Plaintiffs' claims

compared to Plaintiff are abridged. (*Id.*) They cite *Pierce v. Wyndham Vacation Rentals, Inc.*, No. 3:13-CV-641-CCS, 2017 U.S. Dist. LEXIS 163529 (E.D. Tenn. Oct. 3, 2017) to support their stance. The specific language Defendants cite reads, "Determining whether the Plaintiffs have actually presented representative testimony of liability and damages of the collective action is reserved for trial." *Id*. at *23. Defendants believe that *Pierce* supports their position that determining the appropriateness of representative proof requires a factual finding regarding the nature of the individual Opt-In Plaintiffs' claims compared to the claims of the hypothetical representative. In *Pierce*, the district court was determining whether to decertify the collective action. The court ultimately denied the defendants' request for decertification after a thorough analysis and found that representative testimony establishing liability and damages was appropriate. In response to the defendants' argument that the plaintiffs' representative sample was statistically inadequate, thus prompting decertification, the court explained that the determination of "whether the Plaintiffs have actually presented representative testimony of liability and damages of the collective action is reserved for trial." *Id*. The defendants were not permitted to conduct individualized discovery of all the opt-in plaintiffs and the collective action was certified.

Defendants will have the opportunity to challenge the adequacy of Plaintiffs' use of representative discovery to establish liability and damages at trial. There is nothing in the Magistrate Judge's Order that prevents them from asserting such a defense. Further, there is nothing in *Pierce* to support their argument that they must have the opportunity to conduct discovery of all Opt-In Plaintiffs in order to challenge the representativeness of Plaintiff's proof of damages. The Court does not agree with Defendants that the Magistrate Judge's Order violated their due process rights by denying them the opportunity to conduct discovery into the nature of

each Opt-In Plaintiffs' claims, thus hindering their ability to challenge the representativeness of Plaintiff's damages proof at trial.

III.     _The Magistrate Judge's Abuse of Discretion by Limiting Damages Discovery_

Defendants object on the grounds that the Magistrate Judge's Order reflects clear error and abuse of discretion because the Order limited damages discovery to the Representative Sample. Defendants request that the Court reject two portions of the Order—(1) the portion that limits the amount of written and document discovery that Defendants may take of each Opt-In Plaintiff, and (2) the portion that limits depositions—and instead allow Defendants full damages discovery as to each Opt-In Plaintiff.  (ECF No. 385, 16.)

It bears repeating that the scope of discovery is discretionary with the trial court.  _Lewis v. ACB Bus. Servs., Inc._, 135 F.3d 389, 402 (6th Cir. 1998).  Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is _relevant_ to the party's claim or defense and _proportional_ to the needs of the case."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  In considering proportionality, the court must consider, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit."  _Id._  Additionally, a court must limit discovery, including written discovery and depositions, if the court determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or if] the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C).

***Limitation of Written and Document Discovery***

The Magistrate Judge's Order limits written and document discovery.  It allows Defendants to serve one interrogatory and one related document request on each Opt-In Plaintiff subject to Phase II discovery.  (ECF No. 380, 3.)  The interrogatory will ask, "For each workweek that you worked for Defendants;  (a) state whether you contend that you worked off the clock; and (b) if you contend that you worked off the clock, identify the number of hours for which you contend you were not compensated."  (*Id.*)  Similarly, Plaintiffs are allowed to serve one interrogatory and one related document request per Opt-In Plaintiff subject to Phase II discovery on Defendants. (*Id.*)  The interrogatory will ask, "For each workweek the Opt-In Plaintiff was employed during the relevant period, state:  (a) the number of hours worked by the Opt-In Plaintiff; and (b) the number of hours credited to the Opt-In Plaintiff."  (*Id.*)  The Order further allows Defendants and Plaintiffs to each serve two additional interrogatories and two additional document requests for production of documents regarding Opt-In Plaintiffs subject to Phase II discovery.  (*Id.*)  For the following reasons, the Court does not find the Magistrate Judge abused her discretion in limiting the number of interrogatories and requests for production of documents that Defendants may serve.

Defendants wish to have "an opportunity to develop . . . defenses to each Opt-In Plaintiff's claim," which they believe is only possible if the Court allows them to serve ten interrogatories and ten document requests on each Opt-In Plaintiff.  (ECF No. 385, 18.)  First, Defendants fail to state specifically why they should be allowed ten interrogatories and ten requests for production of documents, *as to each Opt-In Plaintiff*, to develop individual defenses.  Defendants do not state what such interrogatories and requests for production of documents would be expected to produce.  Thus, the Court has no way of knowing whether the interrogatories and requests are relevant and

18

proportional.[4]  It appears to the Court that to allow over 68,000 written requests at this stage of the litigation would be extremely unreasonable and unnecessarily burdensome.[5]  The decertification stage was the time for Defendants to substantially develop their defenses, and that stage has passed. Defendants' grievance about not being able to fully develop their defense at this stage is misplaced and is not a reason for the Court to conclude that the Magistrate Judge abused her discretion in limiting the number of interrogatories and document requests.

Defendants next argue that "[e]ach individual who files a consent to join an FLSA case is a 'party plaintiff,'" thus subjecting them all to discovery.  (*Id.* at 17 (citing *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 583 (6th Cir. 2009) and *Ware v. T-Mobile USA*, No. 3:11-CV-0411, 2010 WL 4506019, at * 3 (M.D. Tenn. Oct. 2, 2012))).  While it is true that Opt-In Plaintiffs are "party plaintiffs" as they affirmatively consented to opt into the class, *O'Brien*, 575 F.3d at 583, Defendants are incorrect in stating that all opt-in plaintiffs are subject to full discovery.  The Court has not found, and the parties have not cited, any Sixth Circuit precedent that specifies the proper scope of discovery in an FLSA collective action.  However, there is a substantial number of district court cases concerning what the proper scope should be.  Some federal courts have held

---

[4] Defendants cite *Dinkel v. Medstar Health, Inc.*, No. 11-00998, 2013 WL 12307880, at *4 (D.D.C. Feb. 8, 2013), to support their stance that their requests for ten interrogatories and ten document requests are "not overly burdensome."  That case, however, is not persuasive.  The court in *Dinkel* found, after being presented with the defendants' proposed interrogatories, that "each of the interrogatories [were] sufficiently straightforward such that they [could] be answered by the class members directly, without substantial expenditure of time and resources by either the class members or Plaintiffs' counsel."  *Id.*  Unlike those defendants, Defendants in this case have not presented the Court with its *ten* proposed interrogatories and requests for production of documents.

[5] There are approximately 3,400 Opt-In Plaintiffs.  Ten interrogatories times 3,400 Opt-Ins equals 34,000 interrogatories; ten requests for production of documents times 3,400 Opt-Ins equals 34,000 requests for production of documents.  34,000 interrogatories plus 34,000 requests for production of documents equals 68,000 "written requests."

that defendants can seek individualized discovery as to each opt-in plaintiff,[6] while other courts have limited discovery to a representative sample.[7]  In general, "as the size of the class increases, the cases allowing individualized discovery grow fewer and farther between." *O'Toole,* 2014 U.S. Dist. LEXIS 49408 at *7.  It is, therefore, entirely reasonable and not an abuse of discretion for the Magistrate Judge to impose representative discovery in this collective action which involves approximately 3,400 Opt-In Plaintiffs. *See Gentrup*, 2010 U.S. Dist. LEXIS 143203 at *15 ("It is in this Court's discretion to determine what line of cases is most applicable to the specific facts of the instant case.").

Defendants also argue that these limitations do not allow them "sufficient opportunity to assess whether each qualifies for membership in the collective action, the existence or extent of any alleged injury, and whether such injury stemmed from exposure to the alleged unlawful practice." (ECF No. 385, 18.)  However, as noted above, the Court has already concluded that the remaining Opt-In Plaintiffs were subjected to a common policy, spoken or unspoken, that required them to work off-the-clock.  (ECF No. 357, 12–19.)  Accordingly, this Court partially certified the collective action to include only the claims of full-time Opt-In Unloaders with off-the-clock claims.  (*Id.* at 22.)  The existence of injury is implicit in the Court's partial certification, as is the

---

[6] *See, e.g., Lloyd v. J.P. Morgan Chase & Co.*, 11 Civ. 9305 (LTS)(HBP), 2015 U.S. Dist. LEXIS 35161, at *20–21 (S.D.N.Y. Mar. 20, 2015) (holding that the defendants may seek written discovery from all 100 opt-ins who did not sign arbitration agreements); *Coldiron v. Pizza Hut, Inc.*, No. CV 03-05865-TJH, 2004 U.S. Dist. LEXIS 23610, at *6 (C.D. Cal. Oct. 25, 2004) (permitting individualized discovery from all 306 opt-in plaintiffs).

[7] *See, e.g., Smith v. Lowe's Home Ctrs.*, 236 F.R.D. 354, 357–58 (S.D. Ohio 2006) (ordering representative discovery in a collective action with 1,500 opt-in plaintiffs); *Nelson*, 2009 U.S. Dist. LEXIS 113448 at *8–10 (finding representative discovery appropriate in a collective action with 1,107 opt-in plaintiffs); *Rosenbohm v. Cellco P'ship*, Civil Action 2:17-cv-731, 2019 U.S. Dist. LEXIS 82535, at *8 (S.D. Ohio May 16, 2019) (finding representative discovery appropriate in a collective action with 3,875 opt-in plaintiffs while noting that the defendant did not argue that it was entitled to take full discovery of each opt-in plaintiff).

relationship between injury and alleged unlawful practice.  If Plaintiffs had not made a showing of injury and that their injuries stemmed from Defendants' alleged unlawful practices, the Court would not have allowed to case to proceed as a collective action.  As for Defendants' contentions that the Magistrate Judge's Order limits their ability to assess the *extent* of any alleged injury, the Court disagrees.  The Magistrate Judge allowed one interrogatory and one request for document production, along with an additional two interrogatories and two requests for production of documents.  That first interrogatory asks, broadly, the number of hours actually worked by the Opt-In Plaintiff and the number of hours credited to the Opt-In Plaintiff.  The Court finds that interrogatory sufficiently answers Defendants questions about the extent of injury, especially in light of the explicit instruction by the Magistrate Judge during the October 9, 2018 hearing that the interrogatory is to be answered individually.  The Magistrate Judge did not abuse her discretion in imposing such a limitation.

Lastly, Defendants take issue with the Magistrate Judge's failure to "make any determination of what amount of discovery would be necessary to reasonably assess each Opt-In Plaintiff's claim for damages (if any) and Defendants' defenses thereto."  (*Id.*)  The Court disagrees.  The Magistrate Judge did determine the amount of discovery necessary to reasonably assess each Opt-In Plaintiff's claim for damages and Defendants' defenses.  She concluded that a total of three interrogatories and three requests for production of documents served on the representative sample of 15% of Opt-In Plaintiffs not already subject to Phase I liability discovery is appropriate.  Regardless of whether this Court would have allowed ten interrogatories or one interrogatory, it is not an abuse of discretion for the Magistrate Judge to set a limit of three interrogatories and three requests for production of documents.

***Limitation of Number and Length of Depositions***

The Magistrate Judge's Order permits Defendants to take fifty depositions of Opt-In Plaintiffs subject to Phase II discovery and Plaintiffs may depose the same number of facility-level managers as Defendants depose Opt-In Plaintiffs.  (ECF No. 380, 4.)  The Magistrate Judge limited all depositions, except depositions of retained experts, to 1.5 hours in length, not including breaks or objections.  (*Id.*)  For the following reasons, the Court does not find the Magistrate Judge abused her discretion in setting forth such limitations on the number and length of depositions.

The Court starts its analysis with the obvious—Defendants are dissatisfied that they are only allowed to take fifty depositions and they want the Court to allow them to take their desired number of depositions totaling 14% of all Opt-In Plaintiffs.  (*Id.* at 18.)  Again, district courts have discretion in setting the scope of discovery, which includes allowing or disallowing more than the ten depositions Rule 30 permits.  Fed. R. Civ. P. 30(a)(2)(A)(i); *Lewis*, 135 F.3d at 402.  The question is whether or not the Magistrate Judge abused her discretion, and the Court finds that she has not.  Thus, to the extent Defendants are unhappy with only being able to take fifty depositions rather than depositions of 14% of all Opt-In Plaintiffs, the Court does not find an abuse of discretion in setting this limitation.  *See Potts v. Nashville Limo & Transp., LLC*, No. 3:14-cv-01412, 2018 U.S. Dist. LEXIS 90099, at *11 (M.D. Tenn. May 30, 2018) (denying the defendant's motion for leave to take all opt-in plaintiffs' depositions in a collective action.)

The Court now turns to Defendants' objection that the Magistrate Judge made no determination or finding as to the "representativeness of fifty (50) individuals vis-à-vis the Representative Sample, much less the representativeness of that selection vis-à-vis the entire population of Opt-Ins," which means the Magistrate Judge abused her discretion in limiting the number of depositions to  fifty.  (ECF No. 385, 19.)  The Court disagrees.  Fundamentally,

22

Defendants' argument that the Magistrate Judge made no determination about the representativeness of fifty depositions is baseless. The purpose of a collective action is to allow a large number of allegedly aggrieved persons to move forward as a class rather than a series of individual complainants. Each Opt-In Plaintiff is necessarily representative of others. *See Monroe*, 860 F.3d at 404 ("Several circuits, including our own, hold that individualized defenses alone do not warrant decertification where sufficient common issues or job traits otherwise permit collective litigation."); *O'Brien*, 575 F.3d at 585 ("[T]he plaintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."). Thus, individual discovery is neither necessary nor reasonable, especially given the fact that there are approximately 3,400 Opt-In Plaintiffs in this collective action. Since representative discovery is appropriate in this case, the Magistrate Judge concluded that 15% of Opt-In Plaintiffs who were not already subject to Phase I liability discovery could be subject to damages discovery. Regarding the number of depositions, the Magistrate Judge found it reasonable to subject 10% of the 15% of Opt-Ins who are subject to damages discovery to depositions. The Magistrate Judge simply rounded that number to fifty. Inherent in that decision is the conclusion that the fifty Opt-Ins Plaintiffs subject to depositions are representative of the 15% of Opt-Ins Plaintiffs who are subject to damages discovery; and the 15% of Opt-Ins subject to damages discovery are representative of all Opt-In Plaintiffs. Accordingly, the limitation of fifty depositions is entirely reasonable. The Magistrate Judge did not abuse her discretion in limiting the number of depositions to fifty.

Lastly, Defendants object to the Magistrate Judge's "needless and unduly restrictive" limitation of 1.5 hours per deposition, rather than Defendants' proposed time of 2 hours. (ECF No. 385, 19–20.) Defendants argue 1.5 hours "does not provide Defendants sufficient time to

explore the extent of each individual's claimed 'off-the-clock' work," including ascertaining whether any individual claim is for liquidated damages. (*Id.* at 20.)  It is difficult to understand how 2 hours per deposition provides Defendants "sufficient time to explore the extent of each individual's claimed 'off-the-clock' work" but 1.5 hours per deposition is "needless[ly] and unduly restrictive."  If Defendants are not capable of getting to the point and "exploring the extent of each individual's claimed 'off-the-clock' work" in 1.5 hours, it seems highly unlikely that they would be able to do so in 2 hours.  That being said, the Magistrate Judge did not abuse her discretion and the Court will not modify the Order.

To the extent that Defendants object to limitations on written and document discovery and the number and length of depositions, the Court makes the following observation—a court sitting in the United States District Court for the Northern District of Illinois thoughtfully stated that with regard to discovery in collective actions:  "It must not be forgotten that an exercise of discretion involves a selection among possible points along a spectrum."  *O'Toole v. Sears Roebuck & Co.*, No. 11 C 4611, 2014 U.S. Dist. LEXIS 49408, at *4 (N.D. Ill. Apr. 10, 2014).   Using that refreshingly logical reasoning here, the Magistrate Judge committed no abuse of discretion in "picking" her points along the spectrum and deciding that (1) ten interrogatories, (2) ten requests for production of documents, and (3) ten depositions lasting 1.5 hours was appropriate.

<u>CONCLUSION</u>

Fundamentally, Defendants have not presented to the Court any reason why representative discovery is an inappropriate method of determining damages in this case.  Defendants have not indicated that individual inquiries predominate the damages inquiry.   Nor have Defendants specified how "extrapolation from a representative sample is less likely than is full discovery to

produce an accurate reflection of total damages." *Long v. Trans World Airlines, Inc.*, 761 F. Supp. 1320, 1329 (N.D. Ill. 1991).

Upon review of the Magistrate Judge's Order, the Court hereby **AFFIRMS** the Magistrate Judge's Order in its entirety and **DENIES** all of Defendants' Objections.

**IT IS SO ORDERED** this 17th day of March 2020.

*s/John T. Fowlkes, Jr.*
John T. Fowlkes, Jr.
UNITED STATES DISTRICT JUDGE