**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL KUTZBACK, individually on behalf of himself and others similarly situated** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 2:13-cv-02767-JTF-cgc** |
| **LMS INTELLIBOUND, LLC, a foreign Limited Liability Company and CAPSTONE LOGISTICS, LLC, a Domestic Limited Liability Company,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## ORDER DENYING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT

Before the Court is Plaintiff Michael Kutzback's Motion to Enforce Settlement, filed on April 14, 2023. (ECF No. 516.) Defendant LMS Intellibound, LLC, ("LMS") filed a Response in Opposition on April 28, 2023. (ECF No. 517.) For the below reasons, Kutzback's Motion is **DENIED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The present motion comes seven months after the Court approved a final settlement in this ten-year long Fair Labor Standards Act collective action. The case ultimately resolved on September 6, 2022, with the entry of an Order Granting Motion for Settlement Approval and Order Dismissing Case. (ECF Nos. 512 & 513.) The underlying facts of the case are not relevant, but the details and negotiation of the Settlement Agreement form the crux of the present dispute.

1

The parties agreed to settlement in principle after a fourth mediation on March 23, 2022. (ECF No. 517, 5 – 6.) Two months of negotiations over the terms of the Settlement led to the execution of a final Memorandum of Understanding ("MOU") on May 23, 2022. (ECF No. 507.) The MOU was adapted into a final Settlement Agreement that was submitted to the Court on August 25, 2022, (ECF No. 511), and the MOU was incorporated into the final Settlement Agreement, (ECF No. 511-1, 15.) The Settlement Agreement will not be summarized in full, but certain conditions are disputed here. First, the Settlement Agreement defines "Opt-In Claimants," or those that will be entitled to a portion of the Settlement Fund, as "Opt-In Plaintiffs who return a claim form, which includes Form W-9, that is complete and executed and received by the Settlement Administrator and postmarked within forty-five (45) days of mailing of the notice of Settlement." (*Id.* at 5.) The parties selected Arden Claims Services as the Settlement Administrator. (*Id.* at 7.) Second, the Settlement Approval Process was described as such:

> After the issuance of an order by the District Court approving the Settlement and dismissing with prejudice the Opt-In Plaintiffs' Claims, and within seven (7) days after the Effective Date, the Settlement Administrator shall mail each Opt-In Plaintiff to his or her last known address, as determined by Defendants' records, as updated by any records maintained by Plaintiff's Counsel, and as updated through the National Change of Address database, notice of the Settlement along with a claim form and a pre-paid return envelope. The notice and claim form shall provide a period of forty-five (45) days for each Opt-In Plaintiff to submit to the Settlement Administrator a claim form that contains a completed Form W-9, the Social Security Number or Individual Taxpayer Identification Number of the Opt-In Plaintiff, and an attestation to verify each Opt-In Plaintiff's identity.

(*Id.* at 10.) Later in the document, the parties agreed that "Opt-In Plaintiffs who do not return a completed and executed claim form, or whose claim form is postmarked after the conclusion of the Claim Period, shall waive the right to recover any portion of the Net Settlement Fund. (*Id.* at 11.)

The parties also submitted a finalized Notice of Settlement and Claim Form to the Court, which were to be sent to Opt-in Claimants to submit their claims. (ECF No. 511-3.) The Notice of Settlement stated:

> Individuals who consented to join this litigation and who are affected by the proposed Settlement, in order to receive a portion of the Settlement amount, must complete, execute, and submit the enclosed 'Claim Form,' which includes an attached W-9 form, to the claims administrator, Arden Claims Services [322 Main Street, Port Washington, NY 11050] (the 'Claims Administrator') by [45 days after mailing].

(*Id.* at 1.) It later noted: "If you wish to receive a payment from the Settlement, you must complete, sign, and return the enclosed Claim Form, including IRS Form W-9, by mailing it to the Claims Administrator, postmarked no later than [45 days from mailing]." (*Id.* at 3.) The Claim Form itself said: "To receive a payment, you must complete, sign, and return this Claim Form including the attached W-9 form no later than [45 days from mailing] and send it to [The Settlement Administrator]." (*Id.* at 7.)

The negotiation of these terms was contentious. Relevantly, on June 20, 2022, a disagreement arose over a revised draft sent by Plaintiff to Defendants. In this draft, Plaintiff changed language regarding when a potential Opt-In Claimant had timely submitted a claim for their portion of the Settlement Fund. Specifically, Plaintiff wrote in a comment that, "To the extent an Opt-in Claimant provides a Claim form within the 45-day limit, yet forgets to provide a W-9 with this initial correspondence, he still timely submitted a claim." (ECF No. 517-1, 7.) Once this draft was received by the Defendants, Defendants counsel wrote back disagreeing with this comment: "Your position is clearly contradicted by the MOU, which unequivocally states 'The notice and claim form shall provide a period of forty-five (45) days for each Opt-In Plaintiff to submit to the Settlement Administrator a claim form that contains a completed Form W-9, the Social Security Number or Individual Taxpayer Identification Number of the Opt-In Plaintiff, and

an attestation to verify each Opt-In Plaintiff's identity." (ECF No. 517-4, 2.) The original language from the MOU was later incorporated into the Settlement Agreement.

The Settlement Agreement, Notice of Settlement, and Claim Form were all approved by the Court on September 6, 2022. (ECF No. 512.) After this, the parties proceeded with the settlement process as outlined in the Agreement. It appears this process was not without controversy. On November 15, 2022, Defense Counsel emailed Plaintiff's Counsel and Arden regarding certain claim submissions they had received by email which Plaintiff's Counsel had assisted in filling out. (ECF No. 517-6.) The letter requested that "Plaintiffs' counsel immediately cease filling out claim and W-9 forms, sending pre-filled forms to Opt-In Plaintiffs for signing via DocuSign (or other similar services), and emailing the signed claim forms to the settlement administrator."[1] Plaintiffs did ultimately resend the forms by mail, although later contended they did only "because it was easy to do so and not worth wasting time and judicial resources litigating this issue to the extent we could avoid additional motion practice by simply resending these forms via U.S. mail." (ECF No. 517-7, 2.) Further, on November 22, 2022, as the claims period came to an end, Arden sent out notices to those Opt-In Plaintiffs that had submitted incomplete claim forms, advising them to "complete the enclosed IRS W-9 Tax Form with your information, Social Security Number, and signature and date, and re-submit to us as soon as possible." (ECF No. 517-8.) It is unclear exactly how many Opt-In Plaintiffs cured their claims after this notice.

Regardless, on December 5, 2022, after the claims period had ended, Arden emailed both parties with a list of identified deficient claims and a summary of what Defendants were obligated to pay now that the claims period had closed. (ECF No. 517-2.) A final version of this information,

---

[1] The Court notes that LMS cites this email as stating "[a] claim form submitted via U.S. mail, postmarked by November 28, 2022, is the only acceptable way to submit a claim form under the terms of the settlement agreement. Emailed or faxed documentation is not permitted or allowed, and Arden is not authorized to accept any such submissions." (ECF No. 517, 21.) This quote appears nowhere in the correspondence.

in spreadsheet form, was sent on December 23, 2022. (ECF No. 517-3.) Neither party objected to the information contained within.

The dispute underlying the present motion began on January 10, 2023, when a paralegal for Plaintiff's Counsel emailed Arden inquiring about an Opt-In Plaintiff that had submitted a deficient claim form. (ECF No. 517-7, 9.) An employee of Arden emailed back with the following:

> As you know we did not receive funding for any deficient claims. As such, these individuals will not receive payment. Defendant's counsel was very clear that we are not to contact anyone with a deficient claim. However, if a class member does call us, we will let them know why they did not receive payment.

(*Id.* at 8.) Plaintiff's Counsel emailed Defense Counsel on January 24, 2023, identifying certain Opt-In Plaintiffs with allegedly deficient claims that they believed were nevertheless owed a portion of the Settlement Fund. (*Id.* at 4.) Plaintiff's Counsel stated that they "have recently become aware that Defendants' counsel improperly advised Arden not to communicate with the Opt-In Plaintiffs and that they were prohibited from attempting to advise any opt-in of the necessity to timely cure perceived deficiencies." (*Id.*) When later pressed for evidence of this claim in response, Plaintiffs' Counsel cited to the January 10 email above. (*Id.* at 2.) Plaintiff's Counsel closed the correspondence by requesting that "Defendants provide the settlement payments in accordance with the settlement agreement to the following Opt-in Plaintiffs who timely submitted their claim forms, albeit with minor curable 'deficiencies,' but who were impermissibly denied their right to cure, because Defendants improperly interfered in the claims process." (*Id.* at 4.) Defendants disagreed with Plaintiffs interpretation of the Settlement Agreement and denied any charges of improper conduct.

Plaintiff then filed this "Motion to Enforce Settlement Agreement" on April 14, 2023. (ECF No. 516.) In the motion, Plaintiff argues that Defendants have unreasonably "refused to remit payment to at least 88 Opt-In Plaintiffs." (*Id.* at 1.) They identify eight categories into which these

plaintiffs fall into and contend that Defendants prevented Arden from notifying plaintiffs of defective claims so that they may be cured, and that they are unreasonably refusing to pay five claims that were submitted by means other than U.S. mail. (*Id.* at 2.) They request that the Court enter an Order compelling these payments or provide for an additional 14 days for those plaintiffs to cure their claims.[2]

## II.    <u>LEGAL STANDARD</u>

Plaintiff does not identify a standard or Rule of Civil Procedure under which this Motion is brought. This case was closed and final judgment was entered on September 6, 2022, making the options for further motions limited. As Defendants point out, "there is nothing in the Federal Rules of Civil Procedure styled a 'motion to enforce.'" *Martens v. Thomann*, 273 F.3d 159, 172 (2d Cir. 2001). The *Martens* court cited above, in the class action context, noted that there are "many ways in which the performance of a class action settlement might be called into question before the district court," including contempt proceedings, an entirely new action for breach of contract (as the Settlement Agreement is an enforceable contract), or in a "Motion for Relief from Judgment" under Federal Rule of Civil Procedure 60(b) where a party seeks to modify the terms of a settlement agreement. *Id.* A recent case within the Sixth Circuit to enforce a settlement was brought explicitly as a contempt proceeding. *See Cernelle v. Graminex, L.L.C.*, 437 F.Supp.3d 574, 582 (E.D. Mich. 2020). However, "[t]he Sixth Circuit has explained that a district court possesses broad, inherent authority and equitable power to enforce the terms of a settlement agreement entered into by the parties to litigation." *Id.* (citing *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988)). This power may be exercised after the close of a case, without the need for a new, independent basis for jurisdiction, where "the dismissal order contains one of two

---

[2] At a later point in the motion, Plaintiffs request 60 days for such a curative period. (ECF No. 516, 9.)

provisions: incorporation of the settlement agreement in the dismissal order, or language retaining jurisdiction." *Id.* (citing *Re/Max International, Incorporated v. Realty One, Incorporated*, 271 F.3d 633, 642 (6th Cir. 2001)). Here, the Court's Order Granting Motion for Settlement Approval stated that "The Court will retain jurisdiction over the interpretation and implementation of the Settlement Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of the Settlement Agreement." (ECF No. 512, 4.) This is an explicit retention of jurisdiction. Where the Court has retained jurisdiction, "the court must enforce the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock*, 841 F.2d at 154. Settlement agreements are essentially contracts and courts enforce them as such, including through rectifying any breaches by either party. *Cernelle*, 437 F.Supp.3d at 594.

The Settlement Agreement here states that it will be governed by Tennessee law. (ECF No. 511-1, 19.) Accordingly, the Court must determine whether any breaches of the agreement have been made under Tennessee contract law to resolve this motion.[3] The parties, unsurprisingly, disagree over whether the Settlement Agreement has been breached, which requires the Court to interpret the Agreement. Under Tennessee principles of contract interpretation, the Court must "ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the

---

[3] The Defendants believe this motion should be analyzed as a Motion to Amend Judgment under Federal Rule of Civil Procedure Rule 60(b). The law is certainly not a model a clarity on this topic. However, cases invoking Rule 60(b) often involve situations where a party seeks to enforce the settlement agreement *once the original jurisdictional basis has resolved. Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) ("Enforcement of the settlement agreement, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.") But as even *Kokkonen* recognized, "a district court does have the authority to dismiss pending claims while retaining jurisdiction over the future enforcement of a settlement agreement," and "such ancillary jurisdiction" exists where the Court explicitly reserves it by retaining jurisdiction over a settlement agreement or incorporates the terms of a settlement agreement into the dismissal order in another way. *RE/MAX Intern., Inc. v. Realty One, Inc.*, 271 F.3d 633, 641-42 (6th Cir. 2001) (citing *Kokkonen*, 511 U.S. at 381). The Court did so in the first way here. Given that Plaintiff's Motion claims Defendants have breached the agreement in specific ways and never mentions Rule 60(b), the Court does not believe Rule 60(b) is implicated by the motion. Defendants may characterize Plaintiff's desired relief as "rewriting the settlement agreement," but it is better characterized as seeking to enforce Plaintiff's differing interpretation of the Settlement Agreement.

contractual language." *101 Construction Co. v. Hammet*, 603 S.W.3d 786, 794 (Tenn. Ct. App. 2019) (quoting *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). The language should be that "contained within the four corners of the contract." *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) (citing *Kiser v. Wolfe*, 353 S.W.3d 741, 747 (Tenn. 2011)). Courts should only alter the terms of contract "where, at the time it was executed, both parties were operating under a mutual mistake of fact or law regarding a basic assumption underlying the bargain." *Hyatt v. Adenus Group, LLC*, 656 S.W.3d 349, 369 (Tenn. 2022).

### III.    LEGAL ANALYSIS

Plaintiff argues that Defendants have breached the Settlement Agreement in two ways. First, they argue that Defendants have breached by failing to remit payment to five Opt-In Plaintiffs who submitted complete, timely claims by means other than U.S. Mail. (ECF No. 516, 6.) Second, they argue that Defendants have breached by failing to remit payment to Opt-In Plaintiffs who submitted timely claims with either incomplete or no W-9 Forms attached. (*Id.*) The Court will address both arguments in turn.

*1.   Complete Claims Submitted By Means Other than U.S. Mail*

Plaintiff argues that Defendants have not paid five Opt-In Plaintiffs who submitted complete claims by the deadline by means other than U.S. mail. Specifically, these claims were sent to Arden either through email or fax or were "completed through DocuSign." (ECF No. 516, 6.) Defendants do not dispute that they have not paid out these claims, but argue instead that the MOU, Settlement Agreement, Notice of Settlement, and Claim Form "all explicitly restrict payment to those who submitted claim forms, including Form W-9, by mail and postmarked within 45 days after the mailing of notice, by November 28, 2022." (ECF No. 517, 20.)

The terms of the Settlement Agreement and Claim Form, which were approved by both parties, are clear that submission of claims was required to be done by mail. The Notice of Settlement states that Opt-In Plaintiffs have "two options" regarding the settlement. The first states "If you wish to receive a payment from the Settlement, you must complete, sign, and return the enclosed Claim Form, including IRS Form W-9, by mailing it to the Claims Administrator," and that the form must be "postmarked no later than [*45 days from mailing*]." (ECF No. 511-3, 3.) The Claim Form itself stated "to receive a payment, you must complete, sign, and return this Claim Form **including the attached W-9 form** no later than [*45 days from mailing*] and send it to the following:" before listing Arden's street address and noting it was to be sent "By Mail[.]" (*Id.* at 7) (emphasis in original). The Settlement Agreement says that the notice and form would be sent along with "a pre-paid return envelope." (ECF No. 511-1, 10.) Plaintiffs only argument is that "These five Opt-Ins have complied with their obligations in all material respects." (ECF No. 516, 6.) But Plaintiff advances no argument for why the mail provision above is not "material" and does not provide the Court with any reasoning for how to determine which provisions of the Agreement are "material" and which are not. They further do not point to any provision that provides for alternative means of submission, nor do they argue that the language is in some way ambiguous. The plain language of the Agreement and its related materials, approved by both parties, was phrased exclusively around physical mail and instructed Opt-In Plaintiffs to submit in that manner. The Notice did not provide a phone number, email address, or other means by which claims may be submitted. Based on the ordinary meaning of these terms, Defendants did not breach the settlement agreement by refusing to remit payment on these claims.

   *2.   Incomplete Claims*

Next, Plaintiff argues that Defendants breached the agreement by failing "to remit payment to Opt-In Plaintiffs who submitted timely and completed forms, but whose W-9 forms were missing a date, signature or a social security number." (ECF No. 516, 6.) They claim that these plaintiffs "were not given a full opportunity to cure the alleged deficiencies due to Defendants' malfeasance." (*Id.* at 6.) The malfeasance was allegedly instructing Arden to not contact plaintiffs who submitted W-9 forms with missing information. (*Id.*) Defendants disagree and point to the record.

The record supports Defendants. Plaintiffs provide one email from an Arden employee who wrote, "Defendant's counsel was very clear that we are not to contact anyone with a deficient claim." (ECF No. 516-2, 2.) It is unclear what Arden meant by this statement and the Court would be engaging in speculation by attempting to explain it. Defendants, for their part, claim to have never communicated with this Arden employee nor to have told Arden not to contact those with deficient claims. (ECF No. 517-8, 4.) Regardless, the record concretely demonstrates that Arden did contact those Opt-In Plaintiffs with deficient claims, explaining exactly how each individual claim was deficient and instructing them to cure. (*See* ECF No. 517-9.) Defendants attached sixty letters demonstrating this process. (*Id.*) Arden appears to have sent these letters to those who submitted deficient claims at least one week before the ultimate deadline. Further, these letters were clear that forms were required to be submitted "by mail." (*Id.*) There is simply no evidence Defendants prevented those with deficient claims from curing those claims. Even if there were, nothing in the Settlement Agreement provides for a curative process. Plaintiff does not cite to a portion of any approved document outlining a curative process that the Settlement Administrator would be required to implement. It is unclear how this alleged behavior would have breached the agreement at all.

But Plaintiff makes a more general argument that "individuals who did not submit executed W-9 forms with their claim forms or who submitted incomplete W-9 forms . . . are still entitled payment from the fund," because Defendants "have all of the information contained on the W-9s already" as the Opt-In Plaintiffs' former employer. (ECF No. 516, 7.) "Thus, it was unnecessary for them to return W-9 forms in the first instance[.]" (*Id.*) This argument goes against the clear text of the Settlement Agreement. The MOU, Settlement Agreement, Notice of Settlement, and Claim Form all state that a complete claim must include a completed W-9. The Settlement Agreement defines Opt-In Claimants as "Opt-In Plaintiffs who return a claim form, **which includes Form W-9, that is complete and executed** and received by the Settlement Administrator and postmarked within forty-five (45) days of mailing of the notice of Settlement." (ECF No. 511-1, 5) (emphasis added). The Notice of Settlement is clear: "If you wish to receive a payment from the Settlement, you must **complete, sign, and return the enclosed Claim Form, including IRS Form W-9**, by mailing it to the Claims Administrator, postmarked no later than [*45 days from mailing*]." (ECF No. 511-3, 3) (emphasis added). The Claim Form states: "To receive a payment, you must complete, sign, and return this Claim Form **including the attached W-9 form**[.]" (*Id.* at 7) (emphasis in original). It is irrelevant whether Defendants had this information already: the completion and return of a complete W-9 is required by the Settlement Agreement for a valid claim. Plaintiffs cite cases they claim support their contention that a completed W-9 form is not necessary or is somehow not a "material term[]" of the Agreement. (ECF No. 516, 7 – 8.) Of these, none support the idea that the submission of a W-9 form is never a "material term" of a contract.[4]

---

[4] *Buck v. Young*, No. 17-CV-00270-SPM, 2022 WL 17091989, at *2 (S.D. Ill. Nov. 21, 2022), dealt with a Motion to Enforce a Settlement Agreement where the parties had agreed to settle, but not to the specific terms of that settlement. *Ramos v. Dep't of Corr.*, No. 3:15-CV-1444-VAP, 2018 WL 1368905, at *4 (D. Conn. Mar. 16, 2018), did not place the actual settlement agreement before the Court and it appears undisputed that "the Settlement Agreement did not contemplate the filing of [a W-9]." *Gonzalez v. Jurella*, No. 3:14-cv-01250 (AWT), 2015 WL 9943596, at *5 (D. Conn. Sept. 22, 2015), is similar to *Buck*, and dealt with whether a contract had been *formed*, not entirely executed. *Trostle v. New York State Dep't of Corr. & Cmty. Supervision*, No. 1:13-CV-709, 2017 WL 4863254, at *2 (N.D.N.Y.

Here, the submission of a complete W-9 is included in the definition of a claimant. It is patently material. Defendants did not breach the Settlement Agreement by refusing to remit payment to those that had not submitted complete W-9s, for under the terms of the Settlement Agreement, those plaintiffs were not Opt-In Claimants at all. Plaintiffs cannot plausibly say otherwise given that Defendants explicitly rejected an alternative definition of Opt-In Claimant that did not require a W-9 to be submitted. (ECF No. 517-4, 2.)

For similar reasons, the Court finds that Defendants did not breach the settlement agreement by refusing to remit payment to those that submitted timely but blank Claim Forms and those that submitted complete Claim Forms late. The Settlement Agreement requires returning a completed Claim Form 45 days after mailing in order to qualify as an Opt-In Claimant. Arden notified those it could who had submitted incomplete claims of the necessary steps to cure their claims. It is not the Court's place to rewrite the contract or provide for relief from its terms once it has been agreed too, absent some mistake or unconscionability. *Snyder v. First Tennessee Bank, N.A.*, 450 S.W.3d 515, 518 (Tenn. Ct. App. 2014). These Opt-In Plaintiffs failed to submit valid claims under the terms of the Settlement Agreement. The Defendants did not breach the agreement by refusing to remit payment to them.

   3.   *Notice Issues*

Finally, Plaintiff makes a general request for guidance on whether plaintiffs who claim to have never received the notice and claim form should be allowed to file claims. The Court believes that these claims must unfortunately be considered incomplete. The 45-day settlement period, agreed to by both parties, was the period during which any notice issues were required to be

---

Apr. 28, 2017) *required* the plaintiff to submit a W-9 to receive payment and mostly dealt with how attorneys' fees would be paid. *Duse v. Int'l Bus. Machines Corp.*, 252 F.3d 151, 163 (2d Cir. 2001) dealt with the interaction of a confidentiality provision in a settlement agreement with tax disclosure requirements, not whether such provisions are "material" to a contract.

resolved. Allowing any potential claimant who contends they did not receive notice to file a claim beyond the settlement period would unnecessarily drag out the settlement process past the date set in the Agreement and undermine the finality of the settlement. *Sutton v. Hopkins Cnty., Ky.*, 2009 WL 3834069, at *2 (W.D. Ky. Nov. 16, 2009) ("Drawing a line is essential to achieve certainty and finality.") (quoting *Hartman v. Powell*, 2001 WL 410461 (C.A.D.C. 2001)).

## IV.    <u>CONCLUSION</u>

For the above reasons, the Court finds that Plaintiff's Motion must be **DENIED**. Defendants have not breached the Settlement Agreement. The Court acknowledges Defendants request for attorneys' fees related to the briefing of the present motion but does not believe they are warranted at this time and on this record.

**IT IS SO ORDERED** on this 31st day of May, 2023.

<u>***s/John T. Fowlkes, Jr.***</u>
JOHN T. FOWLKES, JR.
United States District Judge